Syllabus.

# Wytheville.

## THE SOUTHWEST VIRGINIA MINERAL CO. v. CHASE.

### JULY 22, 1897.

Absent, Keith, P.

1. SALE OF LAND—*Growing Trees—Knowledge of Sale to Another.*—A purchaser of real estate who has full knowledge at the time of his purchase that his vendor has sold certain trees growing on the land and conveyed them to the purchaser, and who thereafter accepts from his vendor a deed with covenant of general warranty and for quiet enjoyment, and pays the cash payment for the land, and executes his notes for deferred payments, and pays one of the notes and part of another, cannot, after the lapse of five years, claim an abatement for the value of the trees.

2. SPECIFIC PERFORMANCE—*Ascertaining Amount Due Before Sale—Application of Maxim de Minimis.*—In a suit for the specific performance of a contract for the sale of real estate it is error to decree a sale of the land for default in the payment of a sum certain less the value of an over-lap, and direct the commissioner not to sell till the over-lap is released, or the amount and value thereof is first ascertained. A release deed should be filed, or the extent and value of the over-lap ascertained, before the decree for the sale is entered. But as the over-lap in the case in judgment was ascertained to amount to only about two dollars in value, this court, on the principle *de minimis lex non curat* will not reverse the decree.

3. SALE BY COMMISSIONER—*Bond of Commissioner—Before Whom to be Given.*—The bond required by statute to be given by commissioners to sell lands can only be given before the court which requires the bond to be given, or before the Judge thereof, or the clerk of the court in his office. It is error to direct the clerk of any other court to take the bond, but if the decree directing the bond to be taken by some other court is appealed from, this court will correct the error, as the decree is simply interlocutory.

4. SURVEYS—*Horizontal Measurements—Local Custom.*—The accurate and

legal mode of surveying land is by horizontal measurement, and, in the absence of an express agreement to the contrary, it should be so measured.    Local custom or usage cannot be relied on where it is in conflict with the written agreement of parties, or with well-settled rules of law.  But, in the case in judgment, no such usage or custom has been established in the manner required by law, even if it were admissible.

5. LOCAL CUSTOM—*Established by Evidence of One Witness.*—A local custom or usage may be proved by one witness where it appears that he has full knowledge and long experience on the subject about which he speaks, and testifies explicitly to the duration and universality of the usage, and is not contradicted.

Appeal from a decree of the Circuit Court of Russell county, pronounced August 14, 1896, in a suit in chancery, instituted by the appellee against the appellant to enforce a lien for purchase money reserved in a deed from the appellee to the appellant.

*Amended and affirmed.*

The opinion states the case.

*R. T. Irvine* and *J. F. Bullitt, Jr.,* for the appellant.

*E. M. Fulton,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

One of the errors assigned in this case is that the court ought to have allowed an abatement of the purchase price of the land for the loss of 119 walnut trees standing upon the land when sold and conveyed, which had theretofore been sold to other parties, but were not excepted or reserved in the deed.

On the first day of January, 1887, the appellee executed and delivered to W. T. Miller a writing in the following words: "I hereby authorize and empower Wm. T. Miller, of Wise Courthouse, Va., to sell a certain boundary of land owned by me, situated in Wise county, Va., on Indian Creek, Indian Ridge and Glady Fork of Pound River, being the land on which I now

live, containing four thousand acres, more or less, for which said Miller, or his assignee, is to pay me the sum of three dollars and ninety cents per acre, one-third of which is to be paid by the 1st day of September, 1887; one-third in six months thereafter, and the residue in twelve months from the said 1st day of September, 1887, and upon the receipt of the said first payment, if so requested by the said Miller, or his assignee, I bind myself to make said Miller, or his assignee, a general warranty deed to said land in fee simple, retaining a vendor's lien for said deferred payments.

"But should said Miller fail to make said sale by the 1st day of September, 1887, or should he, or his assignee, fail to make said first payment by the 1st day of September, 1887, then this agreement, at the option of either party, is to be null and void.

"Witness the following signature and seal the 1st day of January, 1887.

J. T. CHASE.    [Seal.]"

Miller was informed by the appellee that he had sold the trees to Horsely, Tate & Co., and that they would not pass with the land. This contract, or writing, after several assignments, was acquired by J. F. Gilliam. On the 30th day of May following, Gilliam entered into a contract with Myers and Gerow, who were making contracts for the purchase of lands for the appellant, a corporation not then organized, by which he undertook to make or cause to be made to Myers and Gerow a good and sufficient deed to the land with covenants of general warranty, if they, after thirty days' time given them to examine the land, determined to purchase. The terms of sale were part cash, and the residue on time. Very soon after Myers and Gerow determined to take the land, they learned from the abstract of title furnished them by their attorneys that the appellee had sold and assigned the walnut trees to other parties, who had recorded their deed therefor, and were also informed by the appellee that the trees had been sold. In August following,

the appellee conveyed the land to the appellant with covenant, among others, of general warranty, and covenants against encumbrances, and for quiet enjoyment, without reserving or excepting the trees. At that time the appellant executed its two notes for the deferred payments, payable in six and twelve months from date, without demanding any abatement of the purchase price for the loss of the trees. It afterwards paid the first note, asked for and obtained an extension of credit for another year upon the last note, and 'after the expiration of that year paid $1,500 upon it. When pressed for the residue of that note, in the year 1891, it demanded an abatement of the purchase price, because a recent survey showed that there was not as much land as was supposed when it executed its notes, and also demanded a credit for two other items, but claimed no abatement on account of the loss of the trees until after this suit was brought in 1892, although it had full knowledge during all that time that the trees had been sold to other parties.

Having knowledge of all the facts before it executed its notes for the land, if it intended to make any objection to the sale, or to demand an abatement of the purchase price on account of its failure to get the trees, such objection or demand ought to have been made at that time. Good faith and· fair dealing required this, for it knew that the trees had been sold to other parties, and that the appellee did not intend to sell, and could not convey, them to it. Its conduct then and afterwards shows that it waived that objection to the sale, and that its demand nearly five years afterwards for an abatement of the purchase money was an afterthought. Its claim was properly disallowed under all the circumstances and facts of the case.

Another error assigned is to the action of the court in rendering a decree against the appellant for a definite sum before it had ascertained the amount of the Poindexter overlap.

It was claimed by appellant in its answer, and admitted by appellee in his deposition, that an adjoining parcel of land, known as the "Poindexter Tract," lapped upon the land in con-

troversy, and, as far as the overlap extended, the appellee did not claim title. The extent of the ownership was not ascertained before the decree of sale was entered, but it was provided in the decree that the appellant should be allowed an abatement on the purchase money on that account, unless the appellee should within sixty days after the rendition of the decree procure and file in the papers a release deed from the owner of the Poindexter tract to the appellant for the land included in the overlap, and, in the event he failed to do this, the court directed that a sum equal to the value of the number of acres in the overlap, at the contract price, should be credited on the amount decreed in favor of the appellee, and appointed the county surveyor to make the necessary survey, and to ascertain and report the amount of such credit. The commissioner appointed to sell the land was directed not to make sale until after the overlap had been released, or its extent ascertained, as directed in the decree.

The release deed ought to have been filed, or the extent of the overlap ascertained before a decree for sale was rendered. The record shows, however, that a release deed was subsequently filed, and also that the overlap was surveyed, and ascertained to be only about one half an acre of land. This is a case where the maxim "*de minimis non curat lex*" clearly applies, the value of the land in controversy being only about $2.00.

The action of the court in adopting the survey of the land made by Fox, instead of the survey made by Habern, is assigned as error.

Without discussing the evidence upon this point it is sufficient to say that we see no error in the court's action.

Another ground of error assigned is that the decree which directed the sale, provided that the commissioner who was to make it should, before acting under the decree, execute and acknowledge bond required in such cases before the clerk of the Circuit Court of Wise county, instead of before the clerk of the Circuit Court of Russell county, where the suit was pending and the decree entered.

By section 3398 of the Code it is provided that "no special commissioner appointed by a decree or order of court, or of a judge in vacation, to sell or rent any property, shall advertise the property for sale or renting, or sell or rent the same, until he shall have given bond before the court or judge, or the clerk of the court in his office, in a penalty, to be prescribed by the court or judge, sufficient to cover at least the probable amount of the whole purchase money or rent, and shall have obtained from the said clerk a certificate that the bond required by law, or by the decree or order has been given, which certificate or copy thereof shall be appended to the advertisement. The clerk shall make the certificate whenever the bond has been given, and note the same in the proceedings in the cause, and shall receive therefor a fee of twenty-five cents, to be taxed in the costs of the suit. The certificate or a copy thereof shall be returned with the report of the sale or renting."

It is plain from the provision of that section that a decree which directed such commissioner to give bond before any other person or tribunal than those named in the statute would be erroneous. By the terms of the statute the bond is *required to be given before the court* or *before the judge of the court*, or *before the clerk of the court in his office*—and the clerk of that court is required to certify that this has been done.

If the court had fixed the penalty of the bond in the decree complained of, and said nothing about the officer before whom it should be executed, there would have been no error in the decree, as the statute provided before whom this should be done; but the decree provides that he shall execute and acknowledge bond before the clerk of the Circuit Court of Wise county, which is in plain violation of the express provision of the statute. The statute is a wise one, passed to protect purchasers at judicial sales, and to prevent them from being compelled to pay the purchase price of land a second time, as they were frequently compelled to do prior to its enactment, and should be carefully upheld and enforced by the courts.

The decree, however, being interlocutory, the appellant had full opportunity to apply to the Circuit Court for the correction of this error, which was no doubt a mere oversight, and being interlocutory this court will amend the decree in that respect. *Johnson* v. *Wagner & Son*, 76 Va. 587, 592; *Price* v. *Thrash*, 30 Gratt. 515, 530.

The appellee insists that the court erred in directing the survey of the land to be made by horizontal instead of surface measurement, and to that extent the decree complained of is prejudicial to him, and asks for its reversal upon this point under Rule IX of the court.

It is claimed that there was a parol agreement between appellee and Gilliam, who sold the land to appellant, that it was to be surveyed by surface measurement, and that the appellant is bound by such agreement. None of the writings between the parties show that it was to be so measured, and the evidence does not show that the appellant, or Myers and Gerow, who made the purchase, knew of any such agreement.

It is also claimed that it was the custom in that country or locality to make surveys by surface measurement, and that the parties are therefore presumed to have contracted with reference to such custom.

It is well settled in this State that a local custom or usage cannot be relied on where it is inconsistent with the terms of the written contract between the parties. *Harris* v. *Carson*, 7° Leigh 639; *Mason* v. *Moyers*, 2 Rob. 613; *Gross* v. *Criss*, 3 Gratt. 250; *Delaplane* v. *Crenshaw*, 15 Gratt. 457; *Richlands* v. *Hiltebeitel*, 92 Va. 91; *Reese & Co.* v. *Bates*, 94 Va. 321, and *Hansbrough* v. Neal, 94 Va. 722.

Neither, it would seem, can it be relied on when it is in conflict with the well-settled rules of law. 2 Minor's Inst. 1061 (4th Ed.); *Barnard* v. *Kellogg*, 10 Wall. 390; 2 Smith's Leading Cases (7th Ed.), p. 915, and note, where many cases are cited.

The accurate and legal mode of surveying land is by hori-

zontal measurement, and, in the absence of an express agreement that it was to be surveyed in a different manner, it would seem that it must be surveyed by horizontal measurement.    Sec. 915 of the Code.

But if, in any view of this case, the appellee was entitled to show that the contract was made with reference to a local usage or custom, it could not avail him, because he has failed to prove that there was an established usage, general and notorious in that locality, with that degree of certainty which the law requires in such cases.    The only witness who testified upon that point was the appellee.    He was asked: "What has been and was at the time you made this deed the custom of the county in reference to making surveys?"    And in reply said: "Surface measurement.    I had heard of horizontal measurement, or I should not have been so particular about having it mentioned that the land was to be surface measurement, though the custom was surface measurement."

It has been doubted in some cases whether one witness is sufficient to prove a local custom or usage, but it seems now to be settled that a jury may be justified in regarding the usage as established by one witness where it appears that he has full knowledge and long experience on the subject about which he speaks, and testifies explicitly to the duration and universality of the usage, and is not contradicted.    *Robinson* v. *United States*, 15 Wall. 363; *Jones* v. *Hoey*, 128 Mass. 584; 1 Greenleaf on Ev., sec. 260 and note.    There is nothing in the record to show that this witness, who was an interested party, had any such knowledge or experience on the subject as would enable him to prove the custom.    Neither does he prove, as the law requires, that it was an established usage or custom, general and notorious in that locality.    *Hansbrough* v. *Neal, supra.*

We are of opinion, on the whole case, that there is no error in the decree complained of for which it should be reversed, but that the decree should be amended, and, as amended, affirmed.

*Amended and affirmed.*