## CHARLESTON.

### DAVIS et als. v. SPRAGG.

Submitted June 10, 1912.   Decided September 23, 1913.

1. . MUNICIPAL CORPORATIONS—*Obstruction of Street—Awning—*
   . *"Public Nuisance."*

   · A private awning erected over a public street without lawful authority is a public nuisance, whether it materially interferes with public travel or not. (p. 673).

2. NUISANCE—*Right to Enjoin—Parties.*

   A private individual may maintain a suit to enjoin a public nuisance only when his rights are injuriously affected in a special manner, different from the public in general. (p. 674).

3. MUNICIPAL CORPORATIONS—*Streets—Right of Abutting Owners.*

   In addition to his right to use the highway in common with the general public, an abutting owner has also a special right of access thereto and to light, air and view therefrom. These are property rights, and exist regardless of the ownership of the fee in the highway. (p. 674).

4. SAME—*Powers—Control of Streets.*

   The council of a city, unauthorized by its charter to do so, acts *ultra vires* when it attempts to permit the permanent occupation of any portion of its public streets for private purposes. (p. 675).

5. ACTION—*Nuisance—Action to Enjoin—Defenses—Maintenance of Similar Nuisance.*

   In a suit to abate a nuisance it is no defense that plaintiff maintains a similar nuisance, or that he was actuated by spite or ill-will to bring his suit. The court can not inquire into plaintiff's motives for suing. (p. 676).

6. . NUISANCE—*Public Nuisance—Right to Enjoin.*

   . Before equity will abate a public nuisance at the suit of a private individual it must appear, not only that plaintiff is specially damaged by it in a manner different from the general public, but also that his injury is serious, affecting the substance and value of his property. (p. 676).

7. MUNICIPAL CORPORATIONS—*Obstruction of Street—Action to Enjoin—Injury—Sufficiency of Evidence.*

   A case in which relief is denied because of failure to prove injury

Error to Circuit Court, Marshall County.

Bill by E. S. Davis and others against J. I. Spragg. Decree for defendant, and plaintiffs bring error.

*Affirmed.*

*D. B. Evans, Caldwell & Caldwell* and *McCamic & Clarke,* for appellants.

*T. H. Shannon* and *Noyes & Ritz,* for appellee.

WILLIAMS, JUDGE:

The plaintiffs, E. S. Davis and E. S. Romine, and the defendant, J. I. Spragg, are the several owners of three adjoining buildings fronting on Main Street in the town of Cameron. The fronts of the buildings are flush with the street. Defendant erected a porch or wooden awning in front of his building twenty-two feet long and fifteen feet above the street, extending to the outer edge of the sidewalk, a distance of about nine feet, and supported by two iron posts about four inches in diameter, resting on the sidewalk near the curb line. Plaintiffs brought this suit to enjoin its maintenance, averring that it is a public nuisance, and that they are specially damaged by it. On a full hearing of the case on bill, answer, general replication and numerous depositions, the chancellor dissolved the preliminary injunction and dismissed plaintiffs' bill, and they have appealed.

It is alleged in the bill that, if the porch is permitted to remain, it will not only obstruct public travel on the streets and constitute a public nuisance, but that it will cause irreparable injury to plaintiffs; that it will obstruct the light and air to their buildings and will greatly depreciate their rental and actual value; that it will cut off the prospect, or view, from the buildings out upon the street; also that the posts or pillars supporting the porch will materially interfere with the right of access to the Romine property from the public street. All these averments are denied, and much evidence was taken on the question whether or not the structure is in fact a public nuisance. But it is admitted that the porch extends out over the street line about nine feet and is supported by four-inch iron posts resting on the sidewalk. This of itself is enough to show that it is a public nuisance. Any unlawful encroachment upon or over

a public highway, whether actually interfering with travel by the public or not, is a purpresture and a nuisance *per se,* and the jury are not at liberty to determine whether such encroachment amounts to a public nuisance by the measure of inconvenience the public may suffer from it. 2 Elliott on Roads and Streets, Sec. 828. This rule is abundantly supported by adjudicated cases. For instance, an awning over the sidewalk, *Hibbard & Co.* v. *Chicago,* 173 Ill. 91; a bay window extending eighteen inches into the street, *The People* v. *Harris,* 203 Ill. 272; a bay window sixteen feet above the sidewalk extending three feet and four inches over the street line, *Reimer's Appeal,* 100 Pa. St. 183; pillars in front of a building, extending twenty-two inches onto the sidewalk, *Bank* v. *Tyson,* 133 Ala. 459, 59 L. R. A. 399; and *Biscof v. Bank,* 75 Neb. 838, 106 N. W. 996, have all been held to be public nuisances. But neither the public, nor its trustees, the municipal officers, are complaining here; they are not before the court.

What then are the rights of these plaintiffs in the premises? Before a private individual can enjoin a public nuisance it must appear that his rights are injuriously affected in a manner different from the public in general.

"In order to secure an efficient administration of the law for the benefit of the public and to avoid multiplicity of suits to accomplish one purpose, public wrongs are redressed at the suit of proper officials, and individuals are not permitted to maintain separate actions or suits to redress a wrong that is public in its nature unless the individual suffers or is threatened with same special, particular, or peculiar injury growing out of the public wrong. If the nuisance causes special or peculiar injury to an individual different in kind and not merely in degree from the injury to the public at large, and the injury is substantial in its nature, the individual may have his civil remedy." 2 Elliott on Roads & Streets, Sec. 850a. *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476; *Talbott* v. *King,* 32 W. Va. 6.

Plaintiffs, being the owners of property abutting on the highway, have an easement therein not possessed by the public in common. In addition to their right of passage over the highway, which they hold in common with all other citizens, they

have a special right of access to their property from the highway, and the right to the light and air from it.   These rights exist independent of the ownership of the fee in the highway. *Barrett* v. *Johnson,* 15 N. J. Eq. 481; *Dill* v. *Board of Ed. Camden,* 47 N. J. Eq. 422.

"Owners of land abutting upon public streets, even in case the fee of the street is in the municipality, have an easement in the streets, not only for ingress and egress, but also for the uninterrupted passage of light and air." Jones on Easements, section 489.

The unlawful occupation of any portion of the public highway in such manner as to materially interfere with the access of an abutting owner to his property or his easement of light and air from the highway, is an unwarranted invasion of his property right, and constitutes a private, as well as a public, nuisance.. 2 Elliott (3d ed.), section 896.

"A structure connecting two buildings on opposite sides of a street, built so far above the street as not to interfere with traffic thereon, is a nuisance as to adjacent property owners, whose light it obstructs." *Townsend* v. *Epstein,* (Md.) 49 Atl. 629; and *Field* v. *Barling,* 149 Ill. 556, a similar case.

The council of the town of Cameron acted *ultra vires* when it passed an ordinance permitting defendant to erect his porch over the sidewalk.   Chapter 47 of the Code is the town's charter, and it vests no authority in the council to authorize the erection of anything on or over its streets for even a public purpose. Having paramount control of the public highway, the legislature could, no doubt, confer such authority upon a municipality, *Wormser* v. *Brown,* 149 N. Y. 163, but in the present case, it has not seen fit to do so.   Moreover, the occupation of the highway in this instance is for a purely private purpose.   "Even where a city is given exclusive power over its streets, such power must be exercised for the good of the general public, and a city can not authorize obstructions in its streets for merely private purposes." 2 Elliott, section 836; *Townsend* v. *Epstein,* 93 Md. 537, 49 Atl. 629; *Pennsylvania Co.* v. *Chicago,* 181 Ill. 289; *Petlis* v. *Johnson,* 56 Ind. 139; *The People* v. *Harris,* 203 Ill. 272; *Reimers Appeal,* 100 Pa. St. 182.

But the right of easement of access and of light and air from the public street is so far regarded as the private property of an abutting owner, that the legislature itself has not the right to deprive the owner of it without just compensation, even when taken or injured for the public good; and certainly it would not have the right to so deprive him of it for purely private purposes. 2 Elliott, section 882, and numerous cases cited in note; *Lahr* v. *Met. El. R. R. Co.,* 104 N. Y. 268; *Story* v. *N. Y. &c. R. R. Co.,* 90 N. Y. 122.

It was no defense to plaintiffs' suit that they were, at the time of bringing it, maintaining awnings or verandas overhanging the street in front of their properties. Defendant, of course, could not plead plaintiffs' wrong in justification of his own. Each alleged wrong must stand and be tried by itself. *Bowman* v. *Humphries,* 132 Iowa 234, 109 N. W. 714; *Robinson* v. *Baugh,* 31 Mich. 290; *Schaidt* v. *Blaul,* 66 Md. 141, 6 Atl. 669; *Bank* v. *Tyson,* 133 Ala. 459, 59 L. R. A. 399.

That plaintiffs may have been influenced by motives of personal spite and ill-will to bring their suits is no defense. The result of the suit must depend upon plaintiffs' legal right, which is not affected by their motives. The court has no right to inquire into their motives in bringing the suit. *Koblegard* v. *Hale,* 60 W. Va. 337.

Defendant's porch being a public nuisance, plaintiffs have a right to its abatement if they have sustained special and material damages. But to entitle them to relief in equity the damages must be substantial; they "must be serious affecting the substance and value of the plaintiffs' estate" *Talbott* v. *King,* 32 W. Va. 6; *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476; *Hahn* v. *Thornberry,* 7 Bush. (Ky.) 403; and *Jenks* v. *Williams,* 115 Mass. 217.

It appears from the written opinion of the chancellor, copied into the brief of counsel for defendant, that he dismissed the bill for the reason "that no serious damage affecting the substance and value of the plaintiffs' estate had been proven." The evidence is voluminous on the question of plaintiffs' alleged injury, and no useful purpose would be accomplished in reciting even the material portions of it in this opinion. It is mostly mat-

ter of the opinions of different witnesses. The testimony of about twenty witnesses was taken by plaintiffs, and of about twenty-five by defendant. The two plaintiffs, and one other, are the only witnesses who attempted to fix any certain amount as the diminution in value of their property on account of the maintenance of the porch. Mr. Davis says his property is damaged to the extent of $2,000 and Mr. Romine's $1,000. Mr. Romine says he considers his property damaged as much as $1,000, and Mr. Davis' about as much, or perhaps a little more than his, because it is a more valuable property. But a vast majority of witnesses say that, in their opinion, no damage has been suffered. A number of photographs of the buildings were taken from different angles in the street, and were filed as evidence. We get a better knowledge from them of the physical surroundings and of the affect on plaintiffs' property produced by the defendant's porch than we can possibly obtain from the description of the situation by the witnesses. Neither of the posts, supporting the porch, stands in front of Romine's building, which is the building next to defendant's; but the nearest post is nine or ten feet on Spragg's side of the dividing line of the lots, extended into the street. It is, therefore, evident that the only injurious effect produced by the posts is their interference with travel on the street. They do not interfere with the plaintiffs' right of access to their respective buildings. Consequently, neither one of them is affected by the posts in a manner different from the public in general. Neither is it proven that the porch itself obstructs plaintiffs' light or air from the street. It does not extend the full distance across the front of defendant's property; it is about the same distance from the dividing line between his and Romine's properties as the iron post is. It, of course, could not shut out the light and air from the upper floors of plaintiffs' buildings. The first floors of all three of the buildings are used as mercantile rooms. Mr. Grossman, a retail merchant and tenant of Mr. Romine occupying the lower floor, says the porch does not obstruct the light or air. He says: "It is the same as it always was." He asked for no reduction in his rent and expected none, on account of defendant's porch. The Davis store room is less likely to be injuriously affected than Romine's, because

it is farther from the porch. We, therefore, think it is clear, from the evidence, that plaintiffs' access to their respective buildings, and their light and air from the street to the lower part of their buildings, has not been injuriously affected.

It does, appear, however, that their view from the second story window, looking out upon the street toward the west, is obstructed for some distance along the sidewalk in front of and to the west of the Spragg building; and much stress is laid by counsel for appellants in their brief upon the proposition that an obstruction of plaintiffs' prospect or view out upon any portion of the highway, constitutes a special injury to their property, entitling them to relief, whether their light and air has been interfered with or not, and in support of this proposition they rely upon *Bank* v. *Tyson,* 133 Ala. 459, 59 L. R. A. 399, and *Bischof* v. *Bank,* 75 Neb. 838, 106 N. W. 996, in both of which cases it was held that: "An owner of land abutting on a public street has an easement of view from every part of the street, of which he can not be deprived by encroachments placed on it by an adjacent proprietor." Those suits were by abutting owners to abate a nuisance by injunction, as in the present case, on the ground that plaintiffs suffered special damages; and in each case the thing sought to be enjoined was the maintenance of pillars erected in front of defendant's building, extending from the sidewalk to the second story and projecting outward beyond the street line, in the Tyson case twenty-two inches and, in the Bischof case, about twenty-four inches, thus cutting off the view of pedestrians on the sidewalk from the front windows of plaintiffs' buildings, which were used for the display of wares and merchandise. The Tyson case was not heard upon full proof. It was an appeal from an order of the court overruling a motion to dissolve the preliminary injunction which had been awarded, and was heard upon the pleadings and *ex parte* affidavits only. Says the court in its opinion: "We try the case on this appeal, on the pleadings as they are presented, in advance of any evidence taken in the cause. Whether the evidence when taken will, on submission of the case for final disposition, sustain the averments for relief or not, we are not given to know." This indicates clearly that plaintiff's right to ultimate relief in

that case would depend upon his proving that his property was actually damaged by the obstruction of his view.

In the Bischof case there seems to have been a final decree by the lower court dismissing plaintiff's bill, on the ground that his damages could be ascertained with reasonable certainty in an action at law. The supreme court reversed the decree and remanded the cause with direction to enter a decree abating the nuisance. In discussing the question whether or not plaintiff had sustained any special injury peculiar to himself, aside from, and independent of, the injury to the general public, the court says: "On this point we derive but little aid from the opinions of different witnesses. That the obstruction in question obstructs the view to the front window of the plaintiff's building, which is kept for mercantile purposes, is self-evident. The value of the front windows of a mercantile house for the display of goods and wares for advertising purposes and of an unobstructed view thereto are matters of common knowledge. The value of a conspicuous business front was not lost sight of by the defendant bank when it planned an ornamental entrance, which extended outwards beyond the sidewalk line, and beyond the front line of adjacent buildings. It requires no evidence to show that any unlawful obstruction that cuts off, to a substantial degree, the view to the front of a business house, or renders it less valuable for the display of goods and advertising purposes, is a damage to the owner of such building, and a damage which is special and peculiar to him, and independent of any damage sustained by the public at large."

We are inclined to think that these cases determine the law correctly, and that, if plaintiffs in this case had proven that the obstruction of the view from the street to the front of their buildings seriously and injuriously affected their actual or rental value, they would have been entitled to relief. But, upon careful reading of the evidence, we think the chancellor correctly decided that they had failed to prove any such damages. In view of the character of the nuisance complained of and the nature of the view interfered with, it being only a view from the upper window upon a portion of the sidewalk, it is an injury which we think is more fanciful than real. The maintenance by

plaintiffs themselves of a similar porch over the front of their buildings, though extending not so far over the sidewalk as defendant's porch, is a circumstance clearly indicating that their alleged injury is without real foundation. They have no right to a view which can be enjoyed only from their own verandas, because they are unlawfully maintained, and constitute a public nuisance as well as defendant's porch. If the obstruction of the upper windows from the view of a pedestrian in the street below is the ground of complaint, it would seem that plaintiffs are more injured by the maintenance of their own porticoes than they are by that of defendant. Because, a pedestrian on the sidewalk, standing in front of the Spragg building, could not read a sign in the upper windows of either of plaintiffs buildings even if Spragg's porch were not there; he would be viewing it at too great an angle; and the view from the sidewalk, immediately in front of plaintiffs' buildings, is obstructed by their own verandas. The Spragg porch, in our opinion, does not obstruct the view of a person in the street from any point therein, from which a sign so placed could be read, and it, therefore, clearly appears that the upper windows in plaintiffs buildings, so far as it relates to their value for the purpose of advertising signs, or for displaying goods and wares, are in nowise interfered with by defendant's porch. We affirm the decree.

*Affirmed.*