ZUNDEL HARK *et al. v.* MOUNTAIN FORK LUMBER
COMPANY *et al.*

(No. 9571)

Submitted January 10, 1945.  Decided March 10, 1945.

*Howell M. Tanner, Harold A. Ritz, Samuel Lopinsky* and *M. O. Litz,* for appellants.

*F. E. Shannon* and *Arthur S. Dayton,* for appellees.

LOVINS, PRESIDENT:

Zundel Hark, Esther Henry Hark, Zeline Henry, Ruth L. Heiner, and Sarah Lopinsky appeal from a decree of the Circuit Court of Wyoming County dismissing their bill of complaint against Mountain Fork Lumber Company, a corporation, and Silas H. Belcher. Hereinafter reference to "defendant" shall designate only the corporate defendant, since the pleadings disclose that Silas H. Belcher acted only as president and general manager of Mountain Fork Lumber Company, and we perceive no reason for making him a party defendant, even though he has made no objection thereto.

Plaintiffs own a tract of 8.64 acres, situate in Wyoming County on Pinnacle Creek, a tributary of Guyan River, about two miles from the confluence of these streams. Their land lies athwart the narrow valley of Pinnacle Creek, and extends upward on each of the hills which bound the same. Some three acres of the tract, divided by the creek, are bottom land and the residue is moun-

tainous. No part thereof is fenced, cultivated or occupied for any purpose. There is some merchantable timber on the land, and the minerals, if any, underlying are undeveloped. A secondary state road passes through and along the easterly line of the land for a distance of about four hundred forty feet, the travelled portion of which at no point exceeds fifteen feet in width. There has been no formal grant or dedication of this road to public use, but the bill of complaint alleges and the answer admits that the same has been used as a public way for thirty years or more, and that during such time public funds have been expended in its maintenance.

Defendant is engaged in cutting and manufacturing timber, a large percentage of which is devoted to industries directly supporting the present war effort. The economic advantages arising from its lumber operations are valuable to the immediate community.

Defendant owns a large tract of standing timber, estimated to contain one hundred million feet, the greater portion of which is located on the upper reaches of Pinnacle Creek upstream from plaintiffs' land. Defendant owns and operates a sawmill at the mouth of Pinnacle Creek, where there are railway facilities. Timber situate on the upper part of Pinnacle Creek must be transported down the creek to the sawmill and railway, and in so doing it is necessary either to cross plaintiffs' land or use the state road above mentioned.

Negotiations between plaintiffs and defendant for a right of way across plaintiffs' land for a tramway resulted in an impasse. Defendant offered to pay in advance seven hundred dollars, which represented a payment of one hundred dollars a year for seven years, the time deemed necessary to remove the timber. Plaintiffs demanded one hundred dollars a month during the time the right of way should be used by defendant. Failing to secure a right of way over plaintiffs' land, defendant, with the passive assent of the state road commissioner and more or less under the supervision of an employee of the state road commission, constructed a thirty-six inch gauge steel rail

tramroad, ostensibly in and on the public road through plaintiffs' land. Upon this tramway are operated two small steam engines, each of which furnishes the motive power for three logging cars, the trains so made up making between twelve to sixteen round-trips a day from the sawmill to the timber site. Prior to the construction of the tramway the center line of the travelled way was located by an engineer acting in behalf of plaintiffs. After the tramway was constructed and the public road widened, a location of said center line was made by an engineer under the direction of the state road commissioner. If the first location was properly made, the ties upon which the steel rails are placed encroach upon plaintiffs' land approximately one foot for a short distance, and when trains conveying logs pass over the tramway the overhanging logs increase such encroachment. On the contrary, if the location of the center line of the travelled way was correctly made by the state road commissioner, then there is no encroachment by the ties above mentioned. The engineer who located the said center line under direction of the state road commissioner refused to state whether there was such encroachment by loaded log trains.

Plaintiffs have importuned the state road commissioner to have the tramway removed, but he has failed to take such action, being advised upon investigation that no hazard or obstruction to the public road exists. His inaction appears also to be motivated in part by a desire to lend the commission's aid to the war effort.

Plaintiffs, in their bill which alleges that their land is worth twenty-five thousand dollars and that it has been damaged to the extent of ten thousand dollars by the construction and operation of the tramway, pray that the operation of the tramway be enjoined and that defendant be required to remove the tramway from the public highway and their land. They pray also for discovery of the amount of lumber, timber and merchandise transported over the tramway, for a decretal judgment in the amount of ten thousand dollars, and for general relief.

The suit was heard on the bill of complaint, answer,

demurrer to the answer, which was overruled, special and general replications to the answer, exhibits and testimony *ore tenus.* On final hearing the trial chancellor by decree denied the relief prayed for, and dismissed plaintiffs' bill.

Two controlling questions are here presented: (1) Do the acts of the defendant constitute trespass on plaintiffs' land; and (2) are plaintiffs entitled to injunctive relief under the facts disclosed in this record? Other incidental questions bearing on those above stated will be hereinafter discussed.

Preliminary to a consideration of the question of trespass on plaintiffs' land, it is necessary to determine whether the public owned a fee simple estate in or an easement over the land on which the public road is located. Where land for the construction of a public road is acquired by the exercise of eminent domain, a right of way only is vested in the public. Such is now the law of this State and has been since the adoption of the Code of 1868. Section 18, Chapter 42, Code, 1868; Code, 54-2-12. The acquisition of a fee by the exercise of the power of eminent domain for the construction of a public road is impliedly forbidden by statute, and hence a greater estate cannot be acquired by implied dedication. In this case the fee simple ownership remained in the predecessors in title of the plaintiffs, and so far as the record shows passed to plaintiffs. The rights of the public are, therefore, limited to an easement for a public road across the 8.64-acre tract of land.

By statute such easement is extended to cover a strip of land thirty feet in width. Section 68, Chapter 66, Acts of the Legislature, 1917, provided: "* * * All public roads which are now established in any of the counties of this state as public roads shall occupy a right-of-way not less than thirty feet wide, unless the county court shall have made a special order for a different width, * * *. All public roads which may hereafter be established in any of the counties of this state, except main county roads, shall occupy a right-of-way not less than thirty feet wide and the necessary slopes." We have been shown no special

order providing for a different width as to the road here in question. The effect of the statute was to establish the width of the easement at thirty feet. This Court in applying said statute has so held, *County Court* v. *Coal Co.*, 103 W. Va. 386, 137 S. E. 754; see *Road Com.* v. *Coogle*, 108 W. Va. 287, 291, 150 S. E. 719. Here the undisputed facts of public use and expenditure of public funds constitute an implied dedication of an easement, which, in the absence of a limiting mark or proof to the contrary, is thirty feet in width. The location of such thirty-foot right of way is determined by measuring "fifteen feet on either side of the 'center of the travelled way' ". *County Court* v. *Coal Co., supra;* Code, 17-1-3. The location of the center line of the travelled way was made by engineers employed by plaintiffs and the state road commissioner. The engineer employed by the plaintiffs located the center line of the travelled way prior to the construction of the tramway. The other engineer, under the direction of the state road commissioner, located the center line after the tramway had been constructed. The first location was made when the travelled way had not been altered or partially obliterated by the work of building the tramway. We think the evidence of the engineer who made the first location is entitled to greater weight in determining the location of the center line of the road. The width of the easement is not affected by the repeal of Section 68, Chapter 66, aforesaid, which was effectuated by Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933. The right of the public to the easement was vested prior to the enactment of the repealing statute, and therefore such repeal did not operate to divest that right. Crawford Statutory Construction, Section 296; Lewis' Sutherland Statutory Construction, 2d Ed., page 547. We conclude that there is an easement for a public road through plaintiffs' land thirty feet in width, and that it was properly located prior to the time the tramway was built.

The crucial question is whether there has been a trespass on plaintiffs' land. Trespass is defined in its limited sense as: "* * * an entry on another man's ground with-

out lawful authority, and doing some damage, however inconsiderable, to his real property". 3 Blackstone's Commentaries, 209. The alleged acts of trespass are twofold: (1) Encroachment on the land of plaintiffs outside the thirty-foot public easement; and (2) construction of the tramway over the thirty-foot public easement. The first aspect presents no legal difficulty, and is predicated upon the location of the public road easement which we have hereinabove determined. We think it is clearly established that the ties of the tramway occupy a small part of plaintiffs' land, which being true the recurring trespass caused by the passage of overhanging loaded log trains only increased its extent. The trial chancellor made no finding of fact on this phase of the case, but disposed of it by holding it inconsequential and that compensation therefor could be recovered in an action at law. We do not agree with that conclusion. Plaintiffs are in a court of equity invoking its powers to protect an established property right, which may not be of much value, but that protection may not be denied on the theory that its value is negligible or slight, *Ritz* v. *Woman's Club,* 114 W. Va. 675, 173 S. E. 564, 182 S. E. 92; *Sullivan* v. *Jones & Laughlin Steel Co.,* 208 Pa. 540, 57 A. 1065; nor on the ground that it is reparable in damages. Each operation of the log trains over the tramway is a recurring and separate trespass. Damages recovered in repeated actions at law would not give plaintiffs adequate compensation. The phrase "irreparable injury" means an injury which is "not adequately reparable by damages." *Sanderlin* v. *Baxter,* 76 Va. 299; Pomeroy's Equity Jurisprudence, 5th Ed., Section 1357.

The construction and operation of the tramway is an integral part of a private undertaking, and defendants cannot be invested with the power to take private property against the owner's consent with or without compensation. *Varner* v. *Martin,* 21 W. Va. 534, 548. It is unnecessary to enlarge upon that obviously just and fundamental principle announced in the *Varner* case. Interested persons are referred to the able discussion of that ques-

tion by Judge Greene. The power to take private property for private use without the consent of the owner cannot be conferred by statute. *Hench v. Pritt,* 62 W. Va. 270, 57 S. E. 808; *Scott Lumber Co. v. Wolford,* 62 W. Va. 555, 59 S. E. 516. By Chapter 12, Acts of the Legislature, 1885, an attempt was made to confer on an owner of timber land the power of eminent domain. In passing on the validity of that statute, it was said: "Section 69*a* and its sub-divisions, chapter 54, Code 1899, in so far as it attempts to confer the power and right of eminent domain upon the owner or owners, lessee or lessees of timber or timber lands, quarries, &c. to be exercised by them in procuring rights of way for their private benefit and not for the public use, is unconstitutional, null and void." Pt. 3, syl., *Hench v. Pritt, supra.* As to the unlawful intrusion on the land of the plaintiffs outside the boundary lines of the public easement, it suffices to say that the construction and operation of the tramway in the circumstances here shown constitute trespass, and even though that trespass may be trivial, plaintiffs are entitled to compel the removal of the tramway from their land.

A somewhat different question arises when the construction and operation of the tramway on the public road easement are considered. As indicated above plaintiffs are the owners of the fee underlying the easement occupied by the public road, on which the private tramway has been constructed. There is a manifest difference in the rights possessed by a common carrier by railroad and those possessed by the owner and operator of a private tramway. See *Spencer v. R. R. Co.,* 23 W. Va. 406; *Arbenz v. Wheeling & H. R. Co.,* 33 W. Va. 1, 10 S. E. 14. Here the tramway is not operated as a common carrier, but is used solely for private purposes and it is doubtful if consent for such occupancy could have been given by statute. "Public officers cannot barter or give away the right of the public to have free, safe and unobstructed passage over the public highways. To do so would be an excess of power." *County Court v. Adams,* 109 W. Va. 421, 428, 155 S. E. 174. As bearing on the necessity for legislative

grant of power to occupy a public way, see Roads and Streets, Elliott, 4th Ed., Section 941, where the following rule is stated: "* * *· We suppose it to be indispensable to the validity of a direct legislative grant that in every instance the use should be public, for highways are held in trust for the public for public purposes and no other. This rule is clearly the legitimate sequence of the fundamental principles, that private property can never be seized under the power of eminent domain for merely private purposes, and that roads and streets are held for the public use and never for permanent private purposes."

We find no legislative assent for the occupancy of the public highway in question. In our view, under Section 8, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, the assent of any official may not be given for the occupancy of the roadbed of a public road by a private tramway. The Supreme Court of Appeals of Virginia, in a case wherein the facts were similar to those in the instant case, said: "In the absence of express legislative authority, a municipality has no power to grant the use of streets for private purposes * * *". *McClintock* v. *Richlands Brick Corp.*, 152 Va. 1, 145 S. E. 425.

Whether an additional burden is imposed on the underlying fee when a private tramway is constructed on the right of way of a public road is a subject on which there is a diversity of judicial opinion. In some jurisdictions, it is held that an additional burden is not imposed. Typical holdings are those of *McClintock* v. *Richlands Brick Corp.*, *supra*, and *White* v. *Blanchard Bros. Granite Co.*, 178 Mass. 363, 59 N. E. 1025. In other jurisdictions it is held that the construction of a private tramway constitutes an added servitude. See Annotation 61 A. L. R. 1046 for comparison and discussion of the different holdings on this subject.

It is difficult for us to reconcile the holdings in Virginia and Massachusetts with well-established law protecting private property rights. The rationale of the two decisions above noted is that the construction and operation of a private tramway used exclusively for private purpose and

benefit do not exceed the use of a public road as contemplated when the public rights are acquired.

The servitude imposed by law when an easement for a public road is acquired is for the use of the general public. The construction of a tramway for exclusive private use and benefit is neither intended nor contemplated, and the servient estate of the landowner cannot be occupied for such private purpose any more than other parts of his estate. *Bradley* v. *Pharr*, 45 La. Ann. 426, 12 So. 618; *Glaessner* v. *Anheuser-Busch Brewing Ass'n*, 100 Mo. 508, 13 S. W. 707. It is no longer arguable that a right of way can be taken across the privately owned land to be occupied by a private tramway. *Hench* v. *Pritt, supra.* A public easement lawfully acquired cannot be broadened to include a private and exclusive right. Plaintiffs owned the fee, subject to the paramount rights of the public to pass over their land. But the rights held by the public do not permit the occupancy over a long period of time of a public road by a structure privately and exclusively used.

It is true that defendant could use the public road for the transportation of its logs by wagon, motor truck, or other vehicle without the installation of a tramway, in which event the defendant would use the public way in common with other persons. Here defendants have constructed a tramway for their exclusive use and for their own private purpose. Such occupancy of a public road will not be permitted.

Defendant argues that the injunction prayed for should be refused on two grounds: (1) That this suit is an attempt on the part of plaintiffs to abate a public nuisance; and (2) that even though plaintiffs suffered an injury, the injury is slight when compared with that which would result to defendant if the operation of the tramway is enjoined. There is an averment in the bill of complaint that the construction of the tramway constitutes a public and private nuisance. A public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons. The distinction between

a public nuisance and a private nuisance is that the former affects the general public, and the latter injures one person or a limited number of persons only. Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public. *Curry* v. *Timber Co.*, 87 W. Va. 429, 105 S. E. 263; *Davis* v. *Spragg*, 72 W. Va. 672, 79 S. E. 652; *Talbott* v. *King*, 32 W. Va. 6, 9 S. E. 48; *Keystone Bridge Company* v. *Sum-. mers et al.*, 13 W. Va. 476. But if the act or condition causes special injury to one or a limited number of persons and substantial permanent damages result which cannot be fully compensated in an action at law, a suit to abate a nuisance so existing may be maintained by a private individual. *Keystone Bridge Company* v. *Summers et al., supra*. We agree that this suit cannot be maintained by the plaintiffs in their private capacity, if the sole object thereof is the abatement of a public nuisance. Although the averments in the bill refer to the acts of defendant as public, as well as a private nuisance, we think the record considered as a whole shows a trespass on plaintiff's land. Essential elements of a nuisance, public or private, are not shown, and we therefore disregard the averments of the bill of complaint in relation thereto.

Defendant maintains that even though plaintiffs have been injured by the operation of the tramway, the injury is so slight and the injury to defendant would be so great if the injunction should issue, that the equities in favor of the defendant overbalance the rights of the plaintiffs and that the injunction should therefore be denied. The case of *Chafin* v. *Coal & Coke Co.*, 109 W. Va. 453, 156 S. E. 47, is cited in support of that contention. In the *Chafin* case the alleged wrongdoer was vested with the right to use plaintiffs' land by agreement made between the defendant coal company and her predecessor in title. The acts complained of redounded to the benefit of the plaintiff in that the coal transported from the adjoining leasehold was of a better quality and when intermingled with coal mined from plaintiffs' land would bring a higher price on the market. Though not discussed in the opinion,

it will be observed that in the *Chafin* case, the coal company in transporting coal from the adjoining leasehold to the land of the plaintiffs exercised a right which accrued by virtue of the agreement of lease. *Robinson* v. *Iron Co.,* 99 W. Va. 435, 129 S. E. 311; *Armstrong* v. *Coal Co.,* 67 W. Va. 589, 607, *et seq.,* 69 S. E. 195.

Once it is ascertained that a person has established property rights which he seeks to protect by injunction, he will not ordinarily be deprived of that remedy on the ground that the injunction operates to the inconvenience of the person against whom the remedy is invoked, or that the rights are of little value to the holder thereof. *Ritz* v. *Woman's Club, supra; Sullivan* v. *Jones & Laughlin Steel Co., supra; Law* v. *Oil Company,* 106 W. Va. 296, 145 S. E. 601; *Stifel* v. *Hannan,* 95 W. Va. 617, 123 S. E. 673. As hereinabove indicated defendant constructed a private tramway on the land of the plaintiffs and in the public road without legal authority to do so, and having committed a trespass now sets up the accomplished fact as barring relief. An equitable right cannot originate from the litigant's own dereliction. Wrongful conduct is not a premise on which equitable rights can be predicated. No fact is shown in this record which conferred equitable rights on defendant, or from which such rights could be inferred. The deliberate invasion of plaintiffs' rights, as shown by this record, precludes any balancing of equities in favor of defendant. *Lynch* v. *Union Inst. for Savings,* 34 N. E. 364; see *Kershishian* v. *Johnson,* 210 Mass. 135, 96 N. E. 56; *Mobile & O. R. Co.* v. *Zimmern,* 206 Ala. 37, 89 So. 475. Nor is the expense and great inconvenience to defendant grounds for application of that theory. *Whalen* v. *Union Bag & Paper Co.,* 208 N. Y. 1, 101 N. E. 805. There are no equities in favor of defendant, and the doctrine of balancing of equities is inapplicable. Moreover, as has been hereinbefore said the injuries to plaintiffs are irreparable. *Sanderlin* v. *Baxter, supra.*

Defendant in its answer and proof submits three other reasons for denying the injunction prayed for herein: (1) That the lumber manufactured by defendant is ur-

gently needed for use in the prosecution of the present war; (2) that the lumber operation is an economic advantage to the community wherein it is located; and (3) that it is customary in Wyoming County to permit private tramways to be constructed on the roadbeds of public roads.

It is highly commendable for any citizen to cooperate · in an effort tending to bring victory in the war now being waged by this Nation. But the scene of this litigation is far removed from the actual zone of military and naval operations, and the situation here shown is not sufficiently urgent to call for abrogation of plaintiffs' property rights. Moreover, defendant is engaged in a private undertaking, and though it may be that the results of such undertaking are used in furtherance of an urgent public purpose, nevertheless, it remains a private business venture. The fact that the lumber manufactured by the defendant is to be used in a laudable public undertaking is not a reason for requiring plaintiffs to relinquish their property rights.

· The economic advantages claimed for the community where the lumber operation is located no doubt exist and are desirable. However, such advantages are indefinite and affect too many persons to furnish a basis for a holding that plaintiffs should relinquish their land for the furtherance of a private undertaking. Plaintiffs' property rights are such that even though a general economic advantage would result from the continued operation of the tramway, it is more important to protect those rights than to permit an invasion thereof on the nebulous ground that an economic advantage accrues from an invasion of those rights.

The occupancy of the roadbed of secondary public roads by private tramways in three instances as established by defendant's evidence is forbidden by statute. Section 8, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933. A local custom, even if one were here established, cannot be relied on when such custom conflicts with established law. *Southwest Virginia Mineral Land Co.* v. *Chase*, 95 Va. 50, 27 S. E. 826, 828; *Coleman, Admr.* v. *M'Murdo*, 5 Rand. 51.

Bearing in mind the purchase price of a considerable

portion of the land at a comparatively recent date, its location and lack of occupancy, and the further fact that it is now unused by plaintiffs for any purpose, the values thereof as fixed by the opinions of witnesses testifying in plaintiffs' behalf seem extravagant. The claims for damages made by plaintiffs are likewise so unreasonable as to strain our credulity. The value of the land and the damages thereto should be fixed on a rational basis.

It is inferentially argued that plaintiffs in prosecuting this suit are actuated by a desire to collect an exorbitant sum for a right of way through their land. We have no right to inquire as to the motives which prompted plaintiffs' action in that respect. *Davis* v. *Spragg, supra.*

Accordingly, we reverse the decree of the Circuit Court of Wyoming County and remand this cause to that court with directions to award a perpetual injunction enjoining and inhibiting defendant, its officers, agents and assigns from further operation of the private tramway on the land of the plaintiffs and on the roadbed of the public road described in the pleadings and proof, and also requiring defendant to remove said tramway from plaintiffs' land and that portion of the road so described. Upon remand the Circuit Court of Wyoming County will ascertain the reasonable damages suffered by plaintiffs caused by the construction of the tramway, as well as a reasonable compensation for occupancy of plaintiffs' land.

*Reversed and remanded with directions.*

Fox, JUDGE, dissenting:

I would not, in any wise, attempt to weaken the rule, based on constitutional provisions, which protects the ownership of private property against the taking thereof for private use, with or without compensation; and, therefore, I agree that the injunction should go against the occupancy by the defendant of the land of the plaintiffs, outside the boundaries of the public highway easement, thirty feet in width, running through their land, but I would limit the injunction to that purpose only.

It may be that the State Road Commissioner was without legal authority to grant permission, direct or otherwise, to the defendant, to lay the tramroad in question on the public highway. As stated in the majority opinion, Section 8, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, provides that: "No railroad or electric or other railway shall be constructed upon the roadbed of any state road, except to cross the same, * * *". But the same section provides, in effect, that no one shall enter upon such road and construct, lay or maintain thereon or thereunder any drainage, sewer or water pipes, gas pipes, electric conduits or other pipes, nor any telegraph poles, telephone or electric line or power poles, or erect any other structure upon, in or over any portion of a state road, except under such restrictions, conditions and regulations as may be prescribed by the State Road Commissioner, thus implying authority to permit pipe lines, and other structures under regulations. I question whether the statute was intended, in its reference to "railroad" or "railway", to include tramroads, and I do not believe that Section 8, read in its entirety, absolutely prohibits the occupancy of a public highway by a "railroad" or "railway", even if those terms be construed to include a tramway such as that involved herein. In *County Court* v. *Adams,* 109 W. Va. 421, 155 S. E. 174, decided in 1930, and, therefore, prior to the 1933 enactment quoted from above, it was said:

> "Public officers cannot barter or give away the right of the public to have free, safe and unobstructed passage over the public highways. To do so would be an excess of power. It does not follow that all cables, wires, bridges and passageways over the highway and in no way interfering with free, safe and unobstructed passage, are public nuisances per se. If they are per se nuisances, the public officials could not authorize their existence; there could be no lawful cables, bridges and passageways over a public road. Should they become dangerous, and that fact ascertained, they should be abated as public nuisances. * * *"

In the situation here presented, the defendant had, and still has, the undoubted right to use the public highway through the plaintiffs' land to transport its timber over the public highway by the usual methods, which, as a matter of common knowledge, we know, would probably cause greater damage to the highway, and to the public using the same, than the operation of the tramroad in question, assuming, as I do, that the tramroad is so located as not to obstruct the free and safe passage of the public over the highway. I doubt if we can say that the State Road Commissioner did not have discretionary authority to permit the use of this highway in the manner which he did. This is not to say that such discretion could be abused to the extent of destroying public or private rights. In such case many ways would be open by which public rights, and the rights of an abutting land owner specially damaged, could be vindicated.

It is, of course, true that what the state has in the thirty-foot strip of land in question is an easement, presumably perpetual; and that the owner of the land on which it rests retains the fee therein. But can what remains to the landowner be made the basis of any right to injunctive relief against acts committed on the surface, which can, in no conceivable way, affect the value or the use of what remains? In theory there may be an additional servitude, and the landowner may have a legal right to protect his estate against such additional servitude; but, when reduced to practical considerations, does it furnish a basis for equitable relief in the circumstances developed by the record before us? Conceding, as I do, the right of the owner of the land to refuse to permit its use by another for any private purpose, I doubt whether that right extends to the use to which a public highway may be devoted, when that use creates no special damage to the owner of the land over which the highway passes. When a public highway is established, either through conveyance of a right of way therefor by the owner, or through presumed dedication arising from long usage, the use of that highway becomes subject to the control of public authorities, save

only in cases where that use creates special damage to the abutting owner.

The fact that the plaintiffs may have a legal right, based upon their ownership of the fee simple estate in the land on which the easement rests, logically creates the right in them to protect that estate, and, generally speaking, equity follows the law, and will use its processes to protect such legal rights. But not always so. It will sometimes refuse to enforce legal rights, where to do so would create a greater wrong, and will, in such cases, leave parties to their legal remedies. Without going into detail, I think this is a case where such a course should be followed. I do not contend that the doctrine of balancing of equities should be applied in this case, but base my view on the fact that the plaintiffs, who are seeking the aid of a court of equity, are obviously invoking its processes to secure for themselves an unjust enrichment, far beyond the reasonable value of the property involved, and based solely on the ownership of a technical fee simple estate in land covered by a perpetual public easement. In my opinion plaintiffs should be remitted to their remedies at law, and public authorities intrusted with the protection of public interests.