PATRICK MEEHAN *vs.* WILLIAM BARRY.

In an action of tort for obstructing the plaintiff's right of way in a private street on which he and the defendant owned adjoining lots, there was evidence that the defendant, for the purpose of abating a public nuisance consisting of water standing in front of his premises, put down stones and gravel, to the depth of one foot at his fence and sloping gradually across the sidewalk and gutter to the centre of the carriage-way, and sloping also with the length of the street, but it did not appear what was the shape of the ground before this was done, except that the level of the plaintiff's lot on the street was higher than the level of the defendant's lot; and there was also evidence that, to keep this gravel from falling on the plaintiff's premises, the defendant put down a plank two and a half inches high at his fence, which reached across the sidewalk and the gutter five feet into the carriage-way, diminishing in height as it approached the latter; and that by this plank and gravel the gutter in front of the defendant's lot was closed, and the water was forced across to the gutter on the other side of the street. *Held,* that the question whether these acts of the defendant, which were all done on a part of the street of which he owned the fee, so interfered with the plaintiff's right of way as to make it less safe and convenient, was for the jury.

TORT. The declaration alleged that the plaintiff was the owner of certain premises in West Roxbury, bounded upon one side on a private way known as Union Street, of which street he was entitled to convenient use and enjoyment for passing and repassing with his teams and otherwise, but that the defendant had obstructed the street, whereby the plaintiff had lost the benefit and use thereof. The answer was a general denial, with an averment that the defendant was also an owner of certain premises upon the street, and that whatever acts he had done were in the nature of reasonable repairs and improvements on that part of the street which lay in front of his own premises, and did not constitute an obstruction of any right of way which the plaintiff might have.

At the trial in the superior court, before *Lord,* J., it appeared that the plaintiff and the defendant owned adjoining lots on said street, deriving title, through certain mesne conveyances, from deeds of the original owners, of the same date, at the time when a large tract of land, which included both lots and also the street, was laid out into building lots, which deeds described the respective lots of the plaintiff and the defendant as " situate on a new street recently laid out," and as " commencing at a point

on said new street," and "thence running on said new street," etc., and referred for more particular description of them to a plan of the whole tract, recorded in the Norfolk registry of deeds, on which the lots and the street as laid out were designated. And it further appeared that, as the street sloped, the plaintiff's lot was the upper and the defendant's the lower one; that, at some time prior to this action, the board of health of the town notified the defendant to remove a nuisance created by water standing in front of his premises; that, for the purpose of doing so, he put gravel and stones upon the sidewalk, gutter and carriage-way in front of his premises, extending four or five feet into the carriage-way, to a depth, at the "inside of the sidewalk," of from twelve inches to two feet, according to the varying testimony of witnesses, and making a gradual slope from the "inside of the sidewalk" to the centre of the street, and also sloping with the length of the street; and that he then, for the purpose of preventing the gravel from falling upon that portion of the sidewalk, gutter and roadway which lay in front of the plaintiff's premises, put down a plank which was, at the "inside of the sidewalk," from two-and-a-half to six inches in height, according to the varying testimony of witnesses, and extended across the sidewalk and gutter, and five or six feet into the road, but diminished in height as it approached the road; that the sidewalk, gutter and roadway above the defendant's premises remained as before; that the gutter was closed by the plank and gravel, and the water made its way across the street to the gutter upon the other side; and that by these acts the nuisance was abated.

There was conflicting testimony as to the depth of the gravel laid on by the defendant, and the extent of its interference with the general grade of the street, and also as to the height of the plank, and the actual inconvenience sustained in walking upon the sidewalk and driving upon the street and up to the plaintiff's gate; but, upon the uncontroverted facts, the judge ruled *pro formâ* that the plaintiff was entitled to maintain the action, and directed the jury to return a verdict for the plaintiff for nominal damages; which being done, the defendant alleged exceptions.

*W. Colburn*, for the defendant, besides cases cited by the plaintiff, cited *Perley* v. *Chandler*, 6 Mass. 454; *Adams* v. *Emerson*, 6 Pick. 56; Gen. Sts. *c.* 26, § 8; *Dickinson* v. *Worcester*, 7 Allen, 19; *Ashley* v. *Wolcott*, 11 Cush. 192; *Curry* v. *Commonwealth Insurance Co.* 10 Pick. 535; *Hall* v. *Lowell*, 10 Cush. 260; *Bigelow* v. *Rutland*, 4 Cush. 247.

*R. M. Morse, Jr.*, for the plaintiff. 1. The plaintiff and defendant owned the fee in that part of the street in front of their respective estates, to the middle of the street. *Phillips* v. *Bowers*, 7 Gray, 21. *Fisher* v. *Smith*, 9 Gray, 441. There was an implied covenant, moreover, that there was such a street for the benefit of the estates granted to the respective parties. *Parker* v. *Smith*, 17 Mass. 413. *O'Linda* v. *Lothrop*, 21 Pick. 292. *Tufts* v. *Charlestown*, 2 Gray, 271. The plaintiff had a right of way over the entire width of the street, for himself and his teams. *Tudor Ice Co.* v. *Cunningham*, 8 Allen, 139.

2. The defendant might do any work in front of his own estate, and to the middle of the street, which was necessary, fit and proper to be done there to enable him to use and enjoy his right in it in a manner beneficial and advantageous to himself; but he could not lawfully change materially the condition of the soil, nor disturb or interfere with the plaintiff's right of passage. *Brown* v. *Stone*, 10 Gray, 61. It is immaterial that he did the acts complained of to abate a nuisance, and abated it thereby. He did not claim that it could not have been abated in any other manner than that which he employed. *Luther* v. *Winnissimet Co.* 9 Cush. 171.

3. He permanently obstructed the plaintiff's right of passage, by erecting a plank across the sidewalk, gutter and a considerable part of the roadway in such a manner as to be an actual annoyance and of positive danger to the plaintiff in passing on foot or in driving his teams; *Appleton* v. *Fullerton*, 1 Gray, 186, by changing essentially the natural and actual grade of the sidewalk and roadway; and by closing the gutter entirely below the plaintiff's premises, thereby forcing the water across the street, to the manifest injury of the roadway. The court may pass on this without the jury.

HOAR, J.   Without intending to express any opinion upon the question whether the conclusion to which the superior court arrived might be supported as a conclusion upon the facts, we think that the case should have been submitted to the jury, and could not be settled as a question of law.

The action is for the obstruction of the plaintiff's right of way in a street over which both parties had a right to pass   The defendant put the gravel, stones and plank, which constituted the alleged obstruction, upon a part of the way of which he appears to have owned the fee.   This was no invasion of the plaintiff's right, unless it interfered with his use of the way, and made it less safe or convenient.   The defendant might repair the way he might improve it; and, within his own part of it, might make any change in its surface beneficial to himself and not tending to incommode any one who had an equal right of way.

Whether the acts of the defendant diminished the convenience of the plaintiff in using the way, was a question of fact for the jury, unless the undisputed facts made it clear beyond all reasonable controversy.

Looking at the evidence, then, in the light most favorable to the defendant, we find, in the first place, that he placed stones and gravel upon the carriageway and sidewalk and across the gutter, raising the grade of the road, and causing it to slope from the fence toward the centre of the carriageway.   Whether this would be an improvement or an injury, would of course depend upon the shape of the ground before it was done.   All that is reported upon that point is that the street descended from the plaintiff's land to and beyond the defendant's, and that there was a place in front of the defendant's premises where water had stood so as to create a public nuisance, which the board of health required the defendant to abate.   The change by filling might make the ground more even, the inclination of the surface more gradual, or convert a low and muddy spot into a firm and hard one.   It is further suggested that, by closing the gutter entirely below the plaintiff's premises, the water was thereby forced across the street, " to the manifest injury of the roadway."   But we come again to a question of fact.   It is sometimes desirable

Meehan v. Barry.

that the water should cross a road on the descent of a hill; and a very common and serviceable contrivance to produce this result is used by highway surveyors in the country, called a water-bar; a ridge of earth or gravel built in a slightly diagonal direction across the centre of the road. There is nothing reported to show that the taking the water from one side of the road to the other was not beneficial. It might pass off so more freely, or prevent the washing out of the road-bed.

The remaining question, of the effect of the plank upon the use of the way, seems to us equally open to discussion. If the plank was but two inches and a half at the inside of the sidewalk, and diminished gradually in height to the middle of the street, it would be for the jury to say whether it would cause a perceptible inconvenience in the use of the carriageway. And on the sidewalk, where it might require the stepping up and down a height of two or three inches, we cannot say as a matter of law that it was an unreasonable or substantial interference with the way. In all our towns and cities which have sidewalks, there are frequent slight changes in the level, caused by a change from brick to flag-stones or gravel, to leave space for entrance to passageways for carriages from the street, or other purposes, which can hardly be regarded as defects or obstructions in the way. Whether the gravel could be kept in place without such a protection, or would be liable to wash away; whether it would be better for the plaintiff to step upon the plank, or into a miry place caused by water standing in the spot which the defendant filled up; and whether the grade of the street was such as to make a slight step up a convenience or an obstruction, are questions which we have no means of solving by the evidence reported. *Exceptions sustained.*