# CHARLESTON.

ADELAIDE E. STIFEL, et al. v. GEORGE W. HANNAN, et al.

Submitted December 11, 1923.   Decided January 9, 1924.

1. RIGHT OF WAY—*One of Several Owners in Common May Make Repairs to, Not Injuriously Affecting the Others.*

   One of several owners in common of a right of way may make·reasonable repairs and improvements therein which do not injuriously affect the others; but he cannot make alterations in its course, grade or surface which will make the way less convenient and useful to any appreciable extent to any of the other co-owners; and this is especially true where the way to the others is one of necessity, while as to him who makes the repairs or improvement it is a way of convenience. (p. 619)

2. PRIVATE WATER SERVICE LINE—*Owner May Prevent Unauthorized Tapping by Others.*

   The owner of a private water service line through which he receives water from a public service water company may prevent the unauthorized tapping of the line by others; and if it be done without his knowledge or acquiescence to his injury equity may require the unauthorized tapping to be disconnected as a continuing trespass and the *status quo* of the private line, as originally laid, restored. (p. 624).

3. PLEADING—*Cross Bill Setting Up New Matter Not Germane to Bill and Answer Demurrable.*

   A cross bill is demurrable which sets up new matter not germane to the bill and answer, and not defensive to the matters contained in the bill. If it seeks to bring before the court other distinct matters and rights it cannot be treated as a cross bill, but is an original suit; and no decree could be entered upon such new and independent matters upon the hearing of the original cause. (p. 627).

Appeal from Circuit Court, Ohio County.

Suit by Adelaide E. Stifel and others against George W. Hannan and others. Decree for plaintiff, and George W. Hannan, defendant, appeals.

*Affirmed.*

*Tom B. Foulk* and *J. M. Ritz,* for appellant.
*Caldwell & Caldwell,* for appellees.

LIVELY, JUDGE:

The decrees appealed from enjoin defendant Hannan from laying a concrete sidewalk in "Hubbard's Lane," and require him to disconnect and remove from a water service line in the lane a water pipe which connects his residence therewith. The right of defendant Hannan to lay in the lane a concrete sidewalk four feet wide, with one foot grass strip between it and a six inch curb, abutting his lot is the principal subject of the litigation.

The lane was originally twenty feet wide and extends from the national road (now a paved highway through the city of Wheeling) westwardly a distance of about eight hundred feet to the property of Wm. P. Hubbard, where it ends, a *cul de sac,* and was reserved and dedicated to the use of the grantees by Samuel H. B. Carter in 1852 in three deeds made to the predecessors in title of Stifels, Hubbard and Hannan, all of whom abut the lane on its southern line. In 1898 Stamm conveyed the land abutting it on the north to Burdats and reserved a ten foot strip adjoining the lane along its northern line the entire length of the Stamm property. In 1900 the owners abutting the lane on the north where the ten foot strip was laid out, agreed in writing with Hubbard and the then abutting owners on the south (excepting, however, the predecessor in title of defendant Hannan) that the ten foot strip should be added to the lane thus making it thirty feet wide and to be used by all of them for ingress and egress. The agreement by which the lane was thus widened to thirty feet provides that the improvement and maintenance of the lane shall be in such manner as the majority of those entitled to its use may agree upon and determine, each to pay a certain proportion of the costs and expenses, under penalty of forfeiting his right to use the lane. Defendant Hannan acquired a lot on the south of the lane fronting thereon 231 feet and abutting on the national road about 100 feet, from Mrs. Hess, in the year 1920. The property of the Stifels joins Hannan's lot on the west. Mrs. Hess had begun the construction of a dwelling on the lot and had connected a water pipe for the use of the dwelling with a service pipe laid in the ten foot strip which was on the farther side of the lane, necessarily

laying it under the lane. This was done by City Suburban Water Company, a public service corporation. It will be seen that all of the abutting land owners on the lane are entitled to use it as a means of ingress and egress to their respective properties. Hannan by his purchase from Hess was entitled to use the twenty foot lane. The agreement of the year 1900, by which others on the north of the lane acquired the right to use it by adding to its width the ten foot strip inured to Hannan's benefit; for if those abutting owners on the north side acquired an easement in the lane they must accord to Hannan a like easement in the ten foot strip. They can not encroach on his right of way by user without consideration. Plaintiffs say that although Hannan was not a party to the agreement of 1900 by which the lane was broadened to thirty feet, nor was his predecessor in title, yet equity and good conscience would require him to be bound by its terms; that if he reaped a benefit under the agreement, he should be bound by its terms, which provide that the majority of the abutting owners shall control in the kind and manner of improvements made in the lane; and plaintiffs, Hubbard, the Stifels and Troll, constitute a majority. They contend that by his answer he claims a benefit in the addition of the ten foot strip and therefore is bound by the terms of the agreement under which it was acquired.

After Hannan had purchased from Hess he began improvement of his lot by filling it, making it from nine to twelve inches higher than the lane, and by constructing a concrete driveway from the national road to his garage near the dwelling, thence down to the lane, and by constructing a concrete walkway from his residence to the lane   He proceeded to complete the dwelling house.  He also began to lay in the lane a concrete sidewalk four feet wide with a curb six inches wide, and with one foot of ground between the walk and curb for grass. Conceiving the construction of this five and a half foot sidewalk to be an encroachment upon their right of free ingress and egress over the lane, this injunction bill was filed with the above results. It was ascertained about this time that the service water line laid in the ten foot strip had been tapped by a pipe running under the lane, thence to the Han-

nan dwelling, and the bill asked that this pipe be removed, on the assumption that it was an encroachment upon the private rights of plaintiffs in the service line, and on their easement in the lane.

Defendant, while admitting that the sidewalk and curb are wholly within the lane, says he has a right to lay it therein, that it is an improvement and not an obstruction or encroachment and that it will not interfere with plaintiff's easement over the lane. In further justification he says that he, Stifel and Hubbard, a short time before he began the sidewalk, agreed that the lane should be improved, established a grade for the contemplated sidewalk and the lane on which it abutted, and that thereupon he began the excavation preparatory thereto. As to this alleged agreement, Stifel and Hubbard say they agreed reluctantly with Hannan that the concrete sidewalk insisted upon by him should be four feet wide only, to which Hannan agreed; and that Hannan violated the agreement by taking five and a half feet. Hannan says the water pipe to the residence was connected to the service line at her property line by his predecessor in title, Mrs. Hess; the water supply company having constructed the line, under the lane, and *attached it to the service line therein owned by it.*

Thus we have the issues: (a) Hannan asserts a right to lay a five and a half foot sidewalk, and avers that it will not interfere with plaintiff's full and free ingress and egress; that it is an improvement and not an obstruction. Plaintiff's assert that Hannan has no right to appropriate this much of the lane for a sidewalk; and that it will render the use thereof by them less convenient and in a measure dangerous; (b) plaintiff's say the water service in the lane belongs to them and was tapped unlawfully; while defendant says it belongs to the water company, and was tapped by it lawfully.

It appears that the Hannan lot was, at the time of its purchase by him, lower than the lane, and that by filling he raised the lot about nine inches higher than the lane. The walk in the lane adjoining his lot was of gravel and extended to the Hubbard property; the lane was improved by crushed stone for a driveway, giving the properties adjoining

a rural and sylvan appearance; an effect sought for and desired by the then occupants of that vicinity. The entrance to the national road forms a sharp angle. The improved road bed is narrow, and cars pass thereon with difficulty at some parts of it. Hannan desired a concrete sidewalk with a curb in the lane in front of his property, corresponding with a concrete sidewalk on the national road abutting the other side of his lot. After he had raised his lot above the lane, Stifel and Hubbard agreed with him that he might change the gravel walk by laying a four foot concrete walk without a curb or grass strip, raising it to a grade with the lot, and that there should be a corresponding raise in the grade of the lane in front of the property. Hannan proceeded to lay a four foot walk with a six inch curb one foot therefrom leaving a space of one foot between the walk and the curb for grass, thus extending the walk five and a half feet into the lane instead of four feet. Upon beginning his excavations five and a half feet in the lane from his property line, he was requested to desist; but advised the protestants that he had "changed his mind" from the four foot walk. It appears that a similar walk with grass strip was laid by him along the national road, and evidently he desired the same along the lane. Thereupon this injunction suit promptly followed. The evidence shows that it was understood by Hannan, Stifel and Hubbard, when they agreed upon the walk, that no more than four feet of the lane and without a curb should be used for that purpose. The two latter did not want concrete sidewalks on the lane at all, preferring the rural appearance in the surroundings, but in deference to Hannan's wishes assented to a four foot concrete sidewalk and no more. We think the agreement was violated by Hannan when he attempted to take more than four feet. The changes in the grade of the lane were contemplated in the agreement, and Smith, a surveyor, had been previously engaged by plaintiffs to establish grades. He did so but they were never reported to, accepted or ratified by plaintiffs. When it became apparent that Hannan was taking more than four feet and laying a heavy curb plaintiffs refused to go further. The verbal agreement become abortive; and it is clear that Hannan was not acting in conformity

thereto when he began his excavation for the curb five and a half feet from his property line. He violated the express conditions of that verbal agreement. Under the agreement of 1900 by which the additional ten foot strip was acquired, the majority abutting owners controlled the character of improvements to be made. While neither Hannan nor his predecessor in title were parties to that agreement, the former claims the benefit thereof and says it was meritorious and in consonance with a fiduciary duty to the other tenants in common in the lane. Whether by taking the benefit of that agreement he is bound by its terms it is not necessary to decide. Recognizing the equal rights of his tenants in common in easement in the matter of making any changes, alterations or improvements therein, he did agree as to the kind and character of changes, and which agreement he violated. It is true he went only eighteen inches further than his agreement, constructing a heavy curb in the driveway. Has he the right to do so, independently of his agreement?

The case then turns upon the inherent right of Hannan to lay the sidewalk as one of the joint owners of the easement. He asserts that he has that right, that his proposed walk is an improvement for the common benefit of the others abutting on the lane and having the use thereof; plaintiffs assert that he does not have the right to change either the grade of the walk or lane without their assent, and that the proposed walk will lessen the width of the lane and obstruct the entrance thereto from the sharp turn at the national road. It will be noted that the curb of the proposed walk will stand about twelve inches higher than the bed of the lane, unless the grade of the lane be raised, some of the witnesses say it will be much higher, and even after the grade of the lane be raised as was contemplated the curb will stand above and not be flush with the lane. The present traveled portion of the road bed made of crushed stone adjoins the gravel walk, and automobiles may with convenience use the gravel path in passing each other. The additional strip of ten feet if graded down at the junction of the lane with the national road would give twenty-four and a half feet as an entrance, but that ten foot strip is on a slight bank and is not used by the cars in passing and

repassing. It might be assumed that the property owners along this ten foot strip would be entitled to the same width of walkway as accorded to those now using the gravel path, when and if the ten foot strip be graded and used as a part of the road bed. Only the twenty foot lane is now used for vehicles and pedestrians, and to take five and a half feet therefrom, set off by a high curb six inches in diameter, would materially lessen the full and free ingress and egress. As before stated, the angles at the entrance of the lane are sharp, especially the Troll corner, and will be at the corner of defendant's lot as improved. Witnesses say the entrance is narrow, twenty feet wide, and the sidewalk and curb would make it dangerous for cars entering. There is conflict in the evidence as to the facility with which cars may enter from the road under the proposed changed conditions. The lower court has evidently resolved that conflict in favor of plaintiffs; and we are not disposed to disturb that finding.

The dedication by Carter of this road was to give the owners of the lots abutting thereon ingress and egress to the national road (then the only road in that vicinity) an easement of way appurtenant to the land, to and from the parcels of land ''adjoining,'' to the national road; and each of the abutting land owners are tenants in common in the easement of way to the national road from their respective properties. *Shaver* v. *Edgell,* 48 W. Va. 502; Washburn on Easements, p. 257.

Hannan asserts that it was not only his right but his duty to construct the sidewalk as contemplated, relying upon the principle enunciated in 9 R. C. L. 795, sec. 51, which reads:

> ''Where there are several owners in common of an easement such as a private way, each owner may make reasonable repairs which do not injuriously affect his co-owners, but he cannot make any alteration of the course of the easement or any change in its grade or surface which makes it less convenient and useful to any appreciable extent to any one who has an equal right therein.''

He contends that a reasonable and proper improvement would require a driveway with a hard surface, and a concrete

sidewalk with curb; and there is much evidence from persons not living in the lane to that effect. He says there is ample room for a five and a half foot sidewalk and a sixteen foot roadway. However, plaintiffs object to a change in the grade of the roadbed or a change from a gravel to a concrete walk. They contend that the concrete sidewalk becomes slick and dangerous in the winter months, much more so than the gravel walk, which is easier to walk upon, which they have laid, and to which they have been accustomed for many years. Each of the several owners in common of a right of way may make reasonable repairs if they do not injuriously affect the rights of the other owners but he may not change the course or grade or surface of the way, so as to make it less convenient for the others. Washburn on Easements p. 294; Jones on Easements sec. 829. Here, the grade of the lane as well as the sidewalk is to be materially changed. Would the change make it less convenient in the least to plaintiffs? We cannot see that it would do so simply as a change in grade (though some of the witnesses say it would); but coupled with the change, eighteen inches of the present road bed is encroached upon with a curb, six inches, not flush with the way. Are the rights of plaintiffs in the easement so injuriously affected thereby as to call for injunctive relief? We are inclined to that view. There can be no question that the width is lessened to that extent. The way is one of necessity to plaintiffs; not so to defendant. Plaintiffs are entitled to maintain and preserve the way as it has existed for many years prior to the purchase by defendant of the Hess lot. It was well defined, open, visible, and he took the property with this servitude upon it. We have heretofore indicated that the entrance to the lane where the proposed sidewalk and curb were about to be laid was twenty feet in width, and at sharp angles. The decree enjoins defendant from constructing a concrete sidewalk with curb. This litigation is the result of the attempt of defendant to lay a five and a half foot concrete sidewalk with curb in violation of his agreement to lay a four foot sidewalk only and without a curb.

Where there are several owners in common in a private way, either may make reasonable repairs which does not in-

juriously affect his co-owners; but he cannot make an altera-
tion of the course of the way or change its grade or surface,
which makes the way less convenient and useful to any appre-
ciable extent to any of the others. *Killion* v. *Kelly*, 120 Mass.
47; *Meehan* v. *Barry*, 97 Mass. 447; *Vinton* v. *Greene*, 158
Mass. 426; *Ellis* v. *Academy of Music*, 120 Pa. 608; 19 C. J.
p. 983. In *Killion* v. *Kelly, supra,* the private way led into a
paved street the grade of which was later raised, and the
owners of the easement in the private way, other than plain-
tiff, began to change the grade so as to correspond with the
newly paved street; the proposed change in grade raised it
about two feet above defendants roadway to his stable; and it
appeared that he could easily make changes in his estate to
adapt it to the raised grade of the private way; and yet the
court held that the other co-owners had no right to impair
defendant's estate by raising the grade, even if they were
willing to pay for the changes. See *Bowers* v. *Myers*, 86 Atl.
860; *Robich* v. *Stone*, 117 S. W. 1195; and *Draper* v. *Var-
nerin*, 107 N. E. 350, illustrating the doctrine that any changes
or encroachments upon a right of way which renders its use
less convenient to any appreciable extent will be prevented by
the courts.

It is argued that the injunction should have been refused
because by granting it more harm will be done to. defendant
than to plaintiffs. The injunction does not prevent defendant
from entering the lane by his driveway, or walkway, nor from
user of the lane as used by the other tenants in common. No
doubt the walk with its grass strip and heavy curb would
beautify and adorn his property. But even this aesthetic
consideration may be subject to debate. Plaintiffs have
thought it better to preserve a country like appearance in the
surroundings of the lane for more than twenty years. On
the other hand, the way is one of necessity to plaintiffs, and
aesthetic considerations must bow to necessity.

We now come to that part of the decree which requires de-
fendant to disconnect his water pipe line and remove it from
under the lane. Plaintiffs' counsel assert that the service line
in the lane is a private line laid by Dr. Burdats then the
owner of the fee and predecessor in title to plaintiff Troll,

and that defendant's water pipe was connected therewith without the knowledge or consent of the owner. On the other hand, defendant's counsel assert that the line in the lane is owned by the water company, which, upon written request of Mrs. Hess, for water for the residence, in the year 1919, made the connection and brought the water under the lane to her property line where she made connection with her pipe, thus conveying the water to her residence. To whom does the water service line in the lane belong? Counsel have not pointed out the pages of the record where the evidence on this point may be found. The record contains 934 pages, most of which is evidence. There is no condensed recital of the evidence in narrative form so as to present the substance clearly and concisely as required by the rules of practice in this court. No finger has pointed out of this vast mass of depositions the evidence to sustain or deny these irreconcilable assertions by counsel of ownership of the service line. There is no sign board to point us the way. This court has frequently refused to search voluminous records in such instances, and have then accorded to the decree the presumption of proper basis of fact. However, we have searched the record and find that witness Tuttle says that, acting for the water company, in July 1919, he made the water connection upon the application of Mrs. Hess, and laid the pipe from the service line in the lane under the road bed and to the property line of Mrs. Hess, supposing that the service line in the lane belonged to his company, without consultation with, notice to, or consent from any person. Dr. Burdats, a witness for defendant and predecessor in title to plaintiff Troll, says he laid three hundred feet of two inch pipe in the ten foot addition to the lane, and extended it up to his house about one hundred and twenty-five feet, the water company refusing to do so; and permitted plaintiff Hubbard to connect with it. Hubbard says Burdats constructed the line from the main in the national road into the lane, and under an arrangement with Burdats he connected therewith laying an extension back to a pond on his land. Troll, successor in title to Burdats, says the water service was there when he purchased the Burdats property, and he is not informed whether he owns it or whether the

others who use it are jointly interested; that if he owns it he objects to it being tapped without his knowledge or consent; that he had experienced no dearth of water supply and did not know that the line had been tapped until informed. Asked if he would have objected if Mrs. Hess had requested permission in 1919, he replied that he would have consulted the others using the line, and if they had consented, he would have also given his consent. This is all the evidence we find on which to base the decree requiring Hannan to disconnect and remove. While Troll, who owns the service line, under this evidence, placed in the ten foot strip many years ago, indicates indifference to the trespass on his line, yet he signed the bill complaining of the connection unlawfully made, and prays for it to be disconnected. The evidence justifies the decree. It would have been easy to show ownership in the water company if that was a fact. Neither the water company nor Hess could lawfully tap a private line, nor could she or her successor justify continuing benefits from the water company's unlawful act.

The decree requires Hannan to ''forthwith remove the said connection from and under the said road or way known as Hubbard's Lane, and restore the said private water line and the said road to the proper condition in which it was prior to the making of such connection thereto.'' Hannan's counsel seem to understand from this decree that he is required to dig up the road or lane and remove the pipe laid by the water company without permission or right from the owners. We do not so interpret the decree. It means that Hannan shall disconnect his line from that of plaintiffs, not that he shall remove a dead pipe from underneath the lane by digging it up. Of course he can pull it if he so desires, and salvage that portion of the pipe. The decree must be given a reasonable construction. Its purpose is to require disconnection from plaintiffs' private line, and restore the status quo.

Defendant's answer was filed at January rules, 1921; at February rules following he filed a cross bill against Wm. P. Hubbard, alleging that the latter had obstructed the lane at its western end where it entered the Hubbard land by placing a gate across it; thus obstructing the free passage of defend-

ant the entire length of the lane in violation of his rights as a
tenant in common therein; and praying that Hubbard be
required to remove the gate and all other obstructions and
that he be enjoined from further obstructing the way. A
demurrer to this cross bill was sustained, and this is assigned
as error. Hubbard says he and his predecessor in title have
had a fence where the gate now stands, enclosing his property
for seventy years without complaint or dispute with ony one.
He also says the cross bill does not show or allege any right
of, or business to be enjoyed or served by, Hannan in the
lane beyond the territorial extent of his own property; that
his use in the lane does not extend beyond ingress and egress
from the national road to the limits of his lot abutting there-
on. It is not necessary to discuss these points under the de-
murrer. The cross bill is demurrable because it sets up mat-
ters not germane to the issue raised by the bill and answer;
and not defensive to the bill of Stifels, Troll and Hubbard.
"A cross bill is a bill brought by a defendant against a plain-
tiff or other parties in a former bill depending, touching the
matter in question in that bill. It is treated as a mere
auxiliary suit or as a dependency upon the original suit, and
can be sustained only on matter growing out of the original
bill. A cross bill is a mode of defense. The original bill and
cross bill are but one cause. It must be confined to the sub-
ject matter of the original bill, and cannot introduce new
and distinct matters not embraced in the original suit, and
if it do so no decree can be found on those matters." Daniels
Chy. Prac. pp. 1742-3, chap. 31; Barton's Chy. Prac. Vol.
1, p. 317, sec. 101. *Vinal* v. *W. Va. O. L. Co.,* 14 W. Va. 637.

The decree will be affirmed.

*Affirmed.*