Laverne L. GOSS and James L.
Nielsen, Appellees,

v.

Efford JOHNSON and George W.
Collins, Jr., Appellants.

No. 2–57252.

Supreme Court of Iowa.

June 30, 1976.

Peters, Campbell & Pearson, Council Bluffs, for appellants.

Matthew Walsh and Logan & Schulte, Council Bluffs, for appellees.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP, and HARRIS, JJ.

UHLENHOPP, Justice.

This case involves the right of defendants, representatives of an unincorporated association of some of the homeowners in a subdivision of rural land, to barricade certain streets in the subdivision.

Pinehurst Subdivision lies in Pottawattamie County just east of Council Bluffs, Iowa. Eugene M. Diller purchased the 50-acre tract comprising the subdivision in 1948. He subdivided part of the tract and in the early 1950's began to sell lots. In March 1956 he and his wife conveyed the north 20 acres of the tract to his father and mother, Lawrence and Agnes Diller. Eugene Diller, and later his parents, altogether made three subdivisions of the 50 acres, called Pinehurst Subdivision, Pinehurst Second Subdivision, and Pinehurst Third Subdivision. As the parties do, we will refer to the 50 acres as a whole as Pinehurst Subdivision.

As the Dillers sold lots in the subdivision they retained title to strips of land set aside as streets. Two of the subdivision streets provide entrances from a county road on the west and two provide entrances from Highway 92 on the south. Eugene Diller said he wanted to be able to develop the tract without worrying about trespassing on someone else's streets. At trial in 1973, after the subdivision had been developed, Diller testified that he had never deeded to anyone the land comprising the streets. He said, however, that in the early 1960's he executed and recorded a quit claim deed by which he abandoned his claim to the streets.

From the beginning of the development, the homeowners in Pinehurst Subdivision cooperated in maintaining the streets. Although at least some of the deeds given by the Dillers contained covenants that the grantees would "contribute ratably with adjoining property owners . . . to the expense of repairing and maintaining [the streets]," the owners always viewed such cooperation and contribution as voluntary. In 1957, the owners formed Pinehurst Improvement Association (PIA), with the object of improving and maintaining the streets of the subdivision. The association organized "work days" and collected funds for such operations as gravelling and paving the streets, erecting signs, and removing snow. The association elected officers and kept books of account.

Sometime in the late 1960's or early 1970's, residents in the eastern part of the

subdivision, primarily those living on a street called Pinecrest Drive, formed a separate association, Pinecrest Limited. This association has "jurisdiction" in the eastern part of the subdivision and maintains the streets there. The expenses of maintaining the four entrances to the subdivision and of removal of snow from the streets were divided between the two associations in proportion to their membership: 70% paid by PIA and 30% by Pinecrest Limited.

Residents of the subdivision have sought several times to get Pottawattamie County to assume maintenance of the streets. The county has refused to do so, however, apparently because the streets do not meet minimum width requirements. To time of trial, therefore, street maintenance has been carried out by the two associations.

Use of the streets by "outsiders" has troubled the residents of the subdivision for some time. As shown by the accompanying sketch, the streets of the subdivision offer a shortcut from the county road on the west to Highway 92 on the south. Subdivision residents claim that such use of the streets, particularly by trucks and other heavy vehicles, damages the streets and makes maintenance more difficult and expensive.

Pinehurst Subdivision

In 1973, members of PIA circulated a petition to close the west ends of the two streets which connect with the county road, Northern Pine Avenue and Pine Valley Road. All but two PIA members signed the petition. At a subsequent meeting, a majority of PIA members present voted to close the two streets. On August 18, 1973, defendants and other members of PIA, acting pursuant to the association vote, erected barricades at the west ends of Northern Pine Avenue and Pine Valley Road.

Plaintiffs LaVerne L. Goss, who lives on the eastern end of Northern Pine Avenue, and James L. Nielsen, who lives on Pinecrest Drive, are members of Pinecrest Limited. They brought this action to require defendants, a former president and the current president of PIA, to remove the barricades, and to restrain defendants from interfering with the use of the two streets. The trial court granted that relief. Defendants appeal.

I. *Right of Plaintiffs to Use the Entrances.* We begin by determining the nature and extent of plaintiffs' right to use the entrances in question; we will then consider whether defendants have a superior right to close the entrances.

■ A. Express Easements. The trial court held that Eugene and Lawrence Diller granted express easements to plaintiffs and the public to use all the streets in the subdivision. Defendants correctly assert that this theory was not pled in plaintiffs' petition. Considerable evidence of express easements was, however, introduced without objection, and we are satisfied the parties actually tried that issue. Where the parties without objection try an issue not presented by the pleadings, the issue is in the case. *Peters v. Peters,* 214 N.W.2d 151, 155 (Iowa); *Rouse v. Rouse,* 174 N.W.2d 660, 666 (Iowa).

Two express easements are involved. In one easement, dated January 27, 1958, Eugene Diller and wife grant to Clarence and Edith Hoovler, the owners of a lot on Pinecrest Drive,

the right in common with other abutting owners and the public generally to use as a right of way the streets shown in the Auditor's Subdivisions known as Pinehurst Subdivision, Pinehurst Second Subdivision, and Pinehurst Third Subdivision, Auditor's Subdivisions of a part of the SE ¼ SE ¼, Section 5, Township 74, Range 43, which streets are shown in the Auditor's Subdivision plat, known as Pinehurst Third Subdivision, filed for record on August 7, 1957 in Book 728, Page 18 in the Pottawattamie County Recorder's Office.

Plaintiffs, as those who assert the easement, have the burden of proving that it gives them a right of way through the two disputed entrances. Plainly plaintiffs are within the group of "abutting owners and the public generally" to whom the easement is granted. A harder question is whether the 1958 easement extends to the entranceways in question. Defendants argue that the easement by its strict terms covers only the streets shown in the Auditor's Subdivision plat in book 728 at page 18. Those streets include Pine Valley Road but not Northern Pine Avenue.

■ We must agree with defendants that the easement does not cover Northern Pine Avenue, but for a different reason than defendants assert. Two years before Eugene Diller and wife granted the easement, they made the conveyance of the north 20 acres, which includes Northern Pine Avenue, to Lawrence and Agnes Diller. Thus in 1958 Eugene Diller and wife could not have granted a right of way over Northern Pine Avenue had they desired to do so. We thus hold that the 1958 easement gave plaintiffs a right of way over Pine Valley Road including its entrance but not over Northern Pine Avenue.

In 1969, Agnes Diller, then the widow and sole beneficiary under the will of Lawrence Diller, granted to Donald and Betty Gillman, owners of a lot on Pinecrest Drive, and to their assigns,

the right in common with other abutting owners and the public generally to use as a right-of-way the streets and roads shown in those Auditor's Subdivisions in

Pottawattamie County, Iowa, known as Pinehurst Subdivision, Pinehurst Second Subdivision, and Pinehurst Third Subdivision as those subdivisions are shown of record in the recorder's office of Pottawattamie County, Iowa, including the plats of record in Book 728 at Pages 17 and 18; Book 1165 at Page 543; Book 1166 at Page 539 and Book 1202 at Page 559 (as modified by the affidavit shown in Book 1205 at Page 111), *but not limited to said plats.* (Italics added.)

Again plaintiffs are within the group of "other abutting owners and the public." The problem again is to ascertain the geographic extent of the easement.

■ We have before us copies of pages 17 and 18 of book 728 and of page 559 of book 1202, but we do not find in the record the other pages mentioned in the easement. On the pages provided us, the western part of Northern Pine Avenue does not appear. The easement states, however, that the streets to which an easement is granted are not limited to the streets shown on the designated plats. We believe that the easement is therefore ambiguous in geographic extent.

This being the case, we find applicable the following statement from *Flynn v. Michigan-Wisconsin Pipeline Co.,* 161 N.W.2d 56, 64–65 (Iowa):

"The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time."

. . . In construing deeds the intent of the grantor as evidenced by the entire instrument is controlling.

See also *Wiegmann v. Baier,* 203 N.W.2d 204, 208 (Iowa); *Sherwood v. Greater Mammoth Vein Coal Co.,* 193 Iowa 365, 185 N.W. 279; rule 344(f)(14), Rules of Civil Procedure. Hence we turn to the other evidence in the case.

■ The testimony shows that Agnes Diller granted the 1969 easement to allay apprehension on the part of an attorney representing a prospective buyer of the Gillman lot on Pinecrest Drive. We do not believe that Agnes Diller intended merely to grant an easement in the eastern end of Northern Pine Avenue; we think she probably intended to grant an easement in all of the streets to which she held title—that is, to all the streets in the north 20 acres of the subdivision. This area includes the barricaded entranceway of Northern Pine Avenue. The 1969 easement thus covers that entranceway.

We conclude therefore that plaintiffs have rights of way by express easements over the entranceways of both Pine Valley Road and Northern Pine Avenue.

B. Other Bases. Plaintiffs also base their right to use the entranceways on prescriptive easements and public dedications of the streets. Holding as we do on the issue of express easements, we need not consider these questions. See however *Simonsen v. Todd,* 261 Iowa 485, 154 N.W.2d 730, and *City of Sioux City v. Tott,* 244 Iowa 1285, 60 N.W.2d 510.

II. *Rights of Other Residents to Interfere with Plaintiffs' Rights of Way.* Having determined the right of plaintiffs to use the entrances in question, we next determine whether defendants have a superior right to close the entrances.

■ Defendants acted for an association of some of the residents of the subdivision. Those residents, like plaintiffs, possess easements in the streets of the subdivision, including the western entrances. Thus plaintiffs and the members of PIA (and possibly others) are owners in common of the easements. An owner in common of an easement may not alter the land so as to render the easement appreciably less convenient for one of his co-owners. *Hultzen v. Witham,* 146 Me. 118, 78 A.2d 342; *Killion v. Kelley,* 120 Mass. 47; *Mehene v. Ball,* 22 Misc.2d 577, 194 N.Y.S.2d 28; *Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 213, 174 P.2d 148; *Stifel v. Hannan,* 95 W.Va. 617, 123 S.E. 673; 25 Am.Jur.2d

Easements & Licenses § 88 at 494. Clearly the erection of the barricades made the easements appreciably less convenient for plaintiffs; the barricades rendered the west entrances impassable and compelled plaintiffs to drive farther to reach some destinations. The residents of the subdivision were not entitled so to impede plaintiffs' use of the common easements.

 That defendants acted for a majority of the members of PIA does not change the result. Although defendants argue that the "incidents of ownership" of the streets have been transferred to PIA, we see no evidence of such transfer. The record contains no instrument from the Dillers or their successors granting PIA any rights in the streets. Besides, the individual members of the association have no right to interfere appreciably with plaintiffs' use of the streets and cannot transfer to the association greater rights than they themselves possess.

Defendants insist that this is a case in which majority rule must control. But property rights may not be denied merely because a majority of the people in an area so desire. Plaintiffs did not agree to abide by the will of a majority of PIA members regarding street closures; plaintiffs were not even members of PIA when the barricades went up. Even if plaintiffs had belonged to PIA at that time, "members [of a voluntary association] who neither authorize nor ratify an act of part of the membership are not bound thereby unless such act was clearly in furtherance of associate objects." 7 C.J.S. Associations § 28(b), at 72. Closing the streets was not clearly in furtherance of PIA's objects; the association existed to improve and maintain the streets, not to close them.

Defendants rely heavily upon a covenant placed in at least some of the Dillers' deeds to owners of lots in the subdivision; defendants say that any easements subsequently granted by the Dillers are "subject to" the covenants, and that plaintiffs admitted this by failing to reply to an allegation to that effect in defendants' answer.

The covenants in question state that "grantee, his heirs and assigns, shall contribute ratably with adjoining property owners using said right of way to the expense of repairing and maintaining the same." We fail to see how this covenant gives PIA or subdivision residents any rights in the streets superior to those of plaintiffs.

Defendants argue finally that PIA should be held the trustee of a resulting trust—with the Dillers as settlors, the lot owners as beneficiaries, and the streets as the *res*. We doubt that defendant presented this theory to the trial court. See *Aetna Cas. & Sur. Co. v. Jewett Lumber Co.*, 209 N.W.2d 48, 50 (Iowa). At any rate, the theory of resulting trust has no application since PIA has not been vested with title to the streets. *Gregory v. Gregory*, 248 Iowa 672, 82 N.W.2d 144; *Newell v. Tweed*, 241 Iowa 90, 40 N.W.2d 20.

We find defendants' arguments unpersuasive.

AFFIRMED.