Alfred W. KAHL, Appellant,

v.

CLEAR LAKE METHODIST CAMP ASSOCIATION, a corporation, Frederick Brown, Burdette Beers, and Leonard Manson, Appellees.

No. 59153.

Supreme Court of Iowa.

May 17, 1978.

Boyle, Schuler & Stanton, Clear Lake, for appellant.

Stillman, Goranson & Minette, Clear Lake, for appellees.

Considered by MOORE, C. J., and Le-GRAND, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

The question is whether an easement exists which would allow the plaintiff, an abutting landowner, to drive across defendant's camp approach to Clear Lake, enabling plaintiff to park his car on his own lot. The trial court determined no such easement exists and we agree.

We adopt the statement of facts as detailed by the trial court in the ruling appealed from:

"The defendant, Clear Lake Methodist Camp Association, is an Iowa corporation and operates the Clear Lake Methodist Camp on the shore of Clear Lake. On July 20, 1925, real estate abutting the lake was platted and subdivided for this purpose. Thereafter, the platted property was conveyed to the association. Portions of the plat are apparently owned or reserved for the use of the association, but lots were sold to private persons for residential buildings. From the plat there are over 200 lots for residential use. All lot owners are members of the association. All but a few lots abut a street. Lots abutting the lake front have a street to the rear. At four places the streets running toward the lake appear to continue between lake front lots on to the lake shore. However, the plat indicates that these apparent street continuations are 'private roads, under the control of the association.' These private roads are 30 feet wide and are the length of the lots on each side of them. They have not been improved or used for vehicular traffic, but have been used as approaches to the lake shore by residents of the camp, who do not have lake front lots. They have been referred to and have been designated by signs as 'camp approaches' to the lake, and hereinafter will be referred to under that name. Until recent years the association has maintained docks at each of these camp approaches for the use of the residents of the camp.

"The plaintiff is the owner of Lot 105 in the camp. He rented and occupied the property for one or more summers before acquiring it by purchase on May 16, 1962. Lot 105 is a lake front lot and there is a 'camp approach' to the lake between Lot 105 and Lot 222, which is a continuation of Wesley Drive. The approach is 30 feet wide and extends along the side of said lots to the lake shore—distance of about 60 feet. There are five good sized shade trees on the area.

" * * *

"The street (Fifth Street) along the rear of Lot 105 is only 14 feet wide, and is too narrow for long time parking of vehicles of the cottage residents. The rear side of the cottage on Lot 105 is about 15 feet back from the lot line, and Kahl [plaintiff] parked his autos on his lot parallel to the rear of his cottage. The height of * * * cement bumpers installed [at the camp approach] for curbing made it difficult for Kahl to park on his lot. He built a moveable plank ramp to get over the curb and placed it along the diagonal curb in the camp approach area. By driving over the curb at this point and over a small portion of the approach area he could park his cars on Lot 105 parallel to the rear of his cottage. Prior to the installation of the curbing there had been no obstructions in the camp approach to prevent Kahl from driving his autos over a portion of it to park on his lot. The placing of the plank ramp along the curb was known to the camp superintendent and to Alex Hammon, member of the board and grounds committee, but the evidence does not indicate any specific discussion of the matter by Kahl and anyone representing the association. There is no evidence of the granting of any written or oral easement to Kahl by the association. The most that can be said from the evidence is that, after installing the curb by using a plank ramp, Kahl continued to drive over the portion of the camp approach next to the street in order to park his cars on his lot. Apparently, the driving over the street end of the approach in no way interferred

with the use of the approach by other camp residents.

"Kahl [, in addition to installing the curbing and spillway also constructed in the camp approach,] kept the portion of the approach mowed between his lot and [a] cement spillway which ran through the center of the approach.

"Apparently adjoining lot owners had been using or maintaining the camp approaches in connection with their own property, and the board of directors in 1971 and 1972, felt some concern about preserving and protecting [the] status [of] association property. Kahl was then a member of the board and was instrumental in obtaining waivers of rights to claim title by adverse possession from the adjoining lot owners. Kahl and his wife executed such a waiver on July 15, 1972.

"In 1972, the state [conservation] commission established or began enforcing regulations relative to docks along the shore line of Clear Lake. The regulations required a permit to put in a dock and further required that docks be at least 50 feet apart unless adjoining property owners consented. In 1972, Kahl and other adjoining owners refused consent and the association was unable to obtain a permit for docks at two of the four camp approaches.

"At a meeting of the board of directors, held April 7, 1973, the camp superintendent was directed to place stakes along the boundary lines of the camp approaches. Wooden stakes of some sort were present at two of the four approaches and had been in place for many years, but none were in place adjacent to the Kahl lot. Leonard Manson, camp superintendent, with the assistance of Burdette Beers, installed steel stakes or pipes about 18 inches high at 4' to 5' intervals along the three sides of the camp approach adjacent to the Kahl lot in July, 1973. These stakes prevent Kahl driving over the street end of the camp approach to park his cars on his lot.

"Although neither Mr. Hammon nor Mr. Beers were at the April meeting of the board when the stakes were ordered to be put in, both had the impression that it was done in retaliation for Kahl's objections to a dock at the camp approach. The evidence discloses no adequate reason or necessity for delineating the boundaries of the camp approach in the manner in which it was done. Because of the trees and the cement spillway the camp approach was never used for vehicular traffic and stakes could affect no one's use of the camp approach except to deprive Kahl of convenient access to the rear of his lot for parking."

■ In general, a roadway easement may be established in one of four ways: (1) by express written grant, (2) by prescription, (3) by necessity, and (4) by implication. *Phillips v. Griffin*, 250 Iowa 1350, 1354, 98 N.W.2d 822, 824 (1959).

■ Because plaintiff signed the written waiver he cannot claim an easement by prescription. See *Schwenker v. Sagers*, 230 N.W.2d 525, 527 (Iowa 1975). The foregoing facts cannot support a claim of easement by necessity. *Webb v. Arterburn*, 246 Iowa 363, 379, 67 N.W.2d 504, 513 (1954). And under these facts plaintiff cannot claim an easement by implication. *Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 838 (Iowa 1976). Faced with these authorities plaintiff pursued his claim on the basis of an express easement.

■ I. The trial court rejected plaintiff's claim that he, together with the other lot owners in Clear Lake Methodist Camp, acquired an express easement in the private road portion of Wesley Drive. Plaintiff's first assignment challenges this ruling.

Clear Lake Methodist Camp was platted July 20, 1925. The dedication included the following statement: " * * * [W]e hereby dedicate the streets and alleys in said subdivision to public use as shown and provided on said plat." On the plat itself appears the following reservation: "All roads marked ' ↑ ' are to be private roads under the control of the association." The camp approach abutting plaintiff's property was designated with the arrow.

Relying on our opinion in *Goss v. Johnson*, 243 N.W.2d 590 (Iowa 1976) plaintiff

claims easement rights to all streets in Clear Lake Methodist Camp, including those designated on the drawing of the plat as private roads under the control of Clear Lake Methodist Camp Association.

We think it is clear that the reservation in the dedication of the designated private areas contradicts plaintiff's claim of an express easement. Contrary to plaintiff's contention the fact the engineer did not sign the reservation on the plat itself is not controlling. The dedicators expressly incorporated the plat with its reservation in the dedication of the streets. Plaintiff's claim of an express easement is thus contradicted by the facts.

Plaintiff's reliance on *Goss*, supra, is misplaced. In *Goss* the express written grant was not so limited. In fact the *Goss* dedication expressly stated it was "not limited to said plat."

II. Plaintiff lists three other assignments of error. One is an alternative statement of his first assignment. Two further assignments (that plaintiff has a proprietary right in the approach and that plaintiff has purchased all rights of his predecessor in title) are bottomed upon the same position plaintiff takes in the first assignment. We have stated our disagreement with that position. Hence plaintiff's remaining assignments merit no further discussion.

The trial court concluded the placement of stakes was in retaliation for plaintiff's objections to a dock. The trial court further concluded the association acted within its rights in doing so. Finally the trial court pointed out that both parties had a legal right to do what was done. The motives of the parties were immaterial. We agree.

AFFIRMED.