W. Dexter Tindley, Jr. *vs.* Department of
Environmental Quality Engineering & others.

Essex.  December 7, 1979. — October 21, 1980.

Present: Hale, C.J., Goodman, & Grant, JJ.

*Real Property,* Littoral property. *Easement,* Extent. *Practice, Civil,*
Summary judgment. *Department of Environmental Quality
Engineering.*

The fourth paragraph of G. L. c. 91, § 10A, did not preclude a harbor-
master or the Department of Environmental Quality Engineering
from granting a permit to build a foot ramp and attached float to be
held by bottom moorings on private flats over the objection of the
owner of the flats where the applicants for the permit claimed an ease-
ment over the flats. [624-627]
In an action seeking review of a decision by the Department of Environ-
mental Quality Engineering which granted the defendants a permit to
build a foot ramp and attached float over private flats in a river, the
judge erred in granting summary judgment for the defendants where,
although the defendants held easement rights over the flats, the issue
whether the proposed structures were reasonably necessary to use of
the easement was a question of fact and created a triable issue which
the affidavits did not obviate. [627-628]

Civil action commenced in the Superior Court on
January 6, 1978.

The case was heard by *Adams,* J., on motions for sum-
mary judgment.

*George P. Laventis* for the plaintiff.

*Maria J. Krokidas* for Robert J. Fossa & others.

*Malcolm Pittman,* Assistant Attorney General, for the
Department of Environmental Quality Engineering.

Goodman, J.  This action was brought by the plaintiff
seeking review (G. L. 30A, § 14) of a decision by the De-
partment of Environmental Quality Engineering (DEQE)

which granted Robert J. Fossa and Barbara Fossa (the Fossas) a permit pursuant to G. L. c. 91, § 10A, to build a foot ramp and attached float to be held by bottom moorings in the Annisquam River[1] and set aside the action of the harbormaster of the city of Gloucester in refusing to grant such a permit. The Fossas seek to build these structures on flats owned by the plaintiff[2] between the high and low water mark over which the Fossas claim an easement under a recorded deed which grants them "a right of way to the Annisquam River over a parcel of land eight (8) feet in width." Also a defendant is one Mehran Juskalian who claims an easement identical to that of the Fossas. The defendants Juskalian and the Fossas filed counterclaims requesting, among other things, a declaration under G. L. c. 231A determining the extent of their easement rights. The plaintiff and the counterclaimants filed motions for summary judgment with supporting affidavits. The Superior Court entered judgment on these motions, affirming the decision of the DEQE and declaring that "the defendants' easement rights" extend over the flats in question. The plaintiff appealed.

1. *The permit under G. L. c. 91, § 10A.* The plaintiff's attack on the decision of the DEQE relies on the provision in the fourth paragraph of that section set out in the margin.[3] His position that the objection of the "owner" is fatal to the Fossas' permit was also the basis of the harbormaster's refusal to grant the permit and resulted in the Fossas' appeal to the DEQE. See G. L. c. 91, § 10A, second and third pars.

---

[1] All the parties agree that this is the effect of the DEQE decision.

[2] For a discussion of the property rights in flats, see *Boston Waterfront Dev. Corp.* v. *Commonwealth,* 378 Mass. 629, 632-637 (1979). See also *Newburyport Redevelopment Authy.* v. *Commonwealth,* 9 Mass. App. Ct. 206 (1980).

[3] "Nothing in this section shall be construed as authorizing the placement of floats or rafts and appurtenant anchors or bottom moorings on private flats of other than the applicant if objected to by the owner or owners thereof." G. L. c. 91, § 10A, fourth paragraph, inserted by St. 1967, c. 543.

We do not read the fourth paragraph so woodenly. The plaintiff's reading would permit the owner of a servient estate, merely by objecting to the harbormaster or the DEQE, to prevent the owner of an easement from exercising a right to moor floats or rafts, even though that right may have been specifically granted. It would indeed be extraordinary if the Legislature intended so drastic a curtailment of the rights of an easement holder. See *Opinion of the Justices,* 365 Mass. 681, 685-690 (1974). It would also be anomalous for the Legislature to impose the responsibility of adjudicating property interests — traditionally left to the courts — on the harbormaster, whose powers are narrow, see, e.g., *Scituate* v. *Maxwell,* 339 Mass. 436, 440-441 (1959), or on the DEQE, whose area of expertise is far removed from such adjudication. See. G. L. c. 91, § 10.

Further, the legislative history of the fourth paragraph indicates no intent to accomplish such results. The fourth paragraph emerged as a compromise, fashioned by a conference committee, between the final House version and the final Senate version of the bill which eventuated in § 10A. Both the House and the Senate versions, when referred to the conference committee, contained two paragraphs. In both bills the first paragraph set out the powers of the harbormaster substantially as now set out in the first paragraph of § 10A. The Senate version of the second paragraph provided, as does the present statute, a right to appeal action by the harbormaster under the first paragraph by a "person aggrieved by a refusal to" issue a permit. The House version, however, gave such right of appeal not only to a person refused a permit, but also to any person aggrieved by the grant of a permit. It seems significant to us that the bill reported by the conference committee and passed by the House and Senate retained the Senate version ("any person aggrieved by a refusal" only) but added the fourth paragraph (as well as the three subsequent paragraphs presently in the statute.) [4]

---

[4] The course of the legislation may be gleaned from an examination of the following material: 1967 House Doc. No. 3754 (the original bill); 1967

In these circumstances, it seems hardly likely that the Senate would acquiesce in a fourth paragraph that went quite beyond a right of appeal and gave an absolute veto to an owner of private flats despite whose objection a permit had been granted. This legislative history leads us to believe that the fourth paragraph gives to a person aggrieved by the grant of a permit to another something less, rather than something more, than standing to appeal to the DEQE. The fourth paragraph, as we read it, substitutes, for standing to contest the grant of a permit to another, an assurance to an owner in the plaintiff's position that such a grant does not affect the assertion of his property rights in an appropriate judicial forum. This interpretation finds support in the subsequent fifth paragraph of § 10A, also added by the conference committee, which declares that action by a harbormaster or the DEQE under § 10A does not affect laws administered by the division of motor boats, the division of marine fisheries, etc.

Thus, we see no violation of DEQE's statutory responsibility in refusing to adjudicate the conflicting property claims. In the case at bar, the DEQE ruled "that the existence of a dispute as to whether the Applicants' easement over the land in question is sufficiently broad to encompass the installation of the proposed temporary float and moorings is not a proper reason for the Gloucester Harbormaster or for [the department] to deny approval of the proposal under G. L. Chapter 91, section 10A." It further found that "the Applicants have asserted a colorable[5] claim to the right

House Journal 107, 1252, 1290 (the introduction and early consideration of the bill in the House); 1967 House Doc. No. 4826 (the bill substituted for No. 3754, see 1967 House Journal 1747); 1967 House Journal 2027, 2350, and 1967 Senate Journal 1678-1679, 1721 (regarding the disagreement on who should have a right to appeal); and 1967 Senate Journal 1811-1812 and 1967 House Journal 2437-2438 (where the respective houses enacted § 10A as presently constituted, except for the change in nomenclature effected by St. 1975, c. 706, § 124).

[5] In context, "colorable" appears to mean nothing more than "disputed" though we need not decide that. Whatever the extent of the phrase "colorable claim," it obviously extends to the claim made under the deeds in this case.

to carry out the proposed work. It is not the proper role of either this Department or the Gloucester Harbormaster to act as a judicial arbiter in a dispute over private property rights." Perhaps out of an abundance of caution, the DEQE further imposed a condition in its decision that it "applies only to the substantive navigational, safety and environmental aspects of the proposed work. It does not grant any property rights or exclusive privileges, nor does it authorize any injury to private property or invasion of private rights."

This seems to us to be sensible administration with which we cannot quarrel. Indeed, it is justified by the phraseology of the fourth paragraph, for in determining that the defendants are not complete strangers to the private flats here involved, the DEQE has determined (in terms of the fourth paragraph) that these are not "private flats of other than the applicant" so that the owner's consent does not come into play.

2. *Easement Rights.* The plaintiff attacks the declaration of the defendants' easement rights in par. 1.b of the judgment[6] on the ground that the granted easement does not, as a matter of law, permit mooring a float and maintaining a ramp on the right of way.[7]

From the affidavits, it is undisputed that the portion of the right of way from the uplands to the low water mark is impassable mud at low tide. Accordingly, the defendants have "the right to make [the right of way] passable and usable for its entire width having due regard to the rights and interests of others. This follows from the general principle

---

[6] This paragraph reads: "1.b. The defendants' easement rights extend either to the low water mark or to a point one hundred rods below the high water mark, whichever is shorter."

[7] The plaintiff makes no argument in his brief before us, as he did in the court below, that the defendants' easements "to the Annisquam River" do not extend as set out in the judgment. (See n.6.) See *Old Colony St. Ry.* v. *Phillips,* 207 Mass. 174, 179-181 (1911); *Michaelson* v. *Silver Beach Improvement Assn.,* 342 Mass. 251, 260-261 (1961) ("words of similar import . . . convey title to the low water mark"). See also *Valentine* v. *Piper,* 22 Pick. 85, 94 (1839) (presumption in grant is that it extends to low water mark); Frankel, Law of Seashore Waters and Water Courses: Maine and Massachusetts 50-51 (1969).

that 'when an easement or other property right is created, every right necessary for its enjoyment is included by implication.' *Sullivan* v. *Donohoe,* 287 Mass. 265, 267 (1934)." *Guillet* v. *Livernois,* 297 Mass. 337, 340 (1937). See *Churchill* v. *Harris,* 257 Mass. 499, 502 (1962). Their easements thus permit the defendants to place such structures on the right of way as are reasonably necessary to its use, having due regard for the plaintiff's rights and interests.

Beyond this, however, the parties interpret par. 1.b of the judgment as declaring the scope of the defendants' "easement rights" to include the right to maintain the ramp and moor the float for which the Fossas received permission from the DEQE. This is also reflected in the judge's conclusion that "[t]he float in question is necessary for the defendants' enjoyment of their easement rights." But reasonableness of use was a question of fact, *Murphy* v. *Mart Realty of Brockton, Inc.,* 348 Mass. 675, 679 (1965); *Meehan* v. *Barry,* 97 Mass. 447, 450 (1867); *Churchill* v. *Harris,* 257 Mass. at 502; *Guillet* v. *Livernois,* 297 Mass. at 341, and created a triable issue which the affidavits did not obviate. Thus, the declaration on summary judgment in par. 1.b was erroneous. *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553 (1976). *Lurensky* v. *Merchants Beef Co., post* 832 (1980), and cases cited.

Accordingly, the judgment is reversed, and the case remanded to the Superior Court for further proceedings in accordance with this opinion. Such proceedings may include the entry of a partial summary judgment (see Mass.R.Civ.P. 54[b], 365 Mass. 821 [1974]), incorporating paragraphs 1.a and 1.c of the judgment.[8]

*So ordered.*

---

[8] These paragraphs read:

"1.a. General Laws c. 91, § 10A does not require the plaintiff's consent before a float permit may be issued on application by the defendants."

"1.c. the decision of the Department of Environmental Quality Engineering in this action is affirmed."

We note that paragraph two of the judgment is directed to the harbormaster who, however, is not a party to this action. No question has been raised as to that paragraph of the judgment. We assume, of course, that if called upon the harbormaster would act in accordance with this opinion.